**Donald Daniel SMITH, Appellant,**

v.

**UNITED STATES of America,
Appellee.**

**No. 25105.**

United States Court of Appeals
Fifth Circuit.

July 24, 1969.

Edward A. Dempsey, Jr., Jacksonville, Fla., for appellant.

Joseph W. Hatchett, Gary B. Tullis, Asst. U. S. Attys., Jacksonville, Fla., for appellee; Edward F. Boardman, U. S. Atty., for appellee.

Before GOLDBERG, GODBOLD and SIMPSON, Circuit Judges.

SIMPSON, Circuit Judge:

The appellant, Daniel Smith, and his co-defendant Charles Mains, Jr.[1] were indicted for forcibly breaking into the Brookview Branch contract postal station in suburban Jacksonville, Florida, with intent to commit larceny in violation of Title 18, U.S.C. Section 2115.[2]

1. The appellant and his co-defendant Mains have taken separate appeals.

2. Title 18, U.S.C. Section 2115, provides: "Whoever forcibly breaks into or attempts to break into any post office, or any building used in whole or in part as a post office, with intent to commit in such post office, or building or part thereof, so used, any larceny or other depredation, shall be fined not more than $1,000 or imprisoned not more than five years, or both. June 25, 1948, c. 645, 62 Stat. 797."

Following trial and a jury verdict of guilty, the court sentenced Smith to five years imprisonment.

A résumé of the evidence upon which the jury found Smith guilty is necessary to an understanding of the appellant's claims of error.

Mr. Saylor, a postal inspector, learned from a reliable informant at about 8:00 p. m., March 30, 1967, that Smith and Mains were planning to break into the Brookview substation that night. Mr. Saylor, along with other postal inspectors and a Duval County law enforcement officer, proceeded to the Brookview station. There, Saylor noticed a 1960 black Chevrolet slowly cruising by the five and ten cent store in which the substation was located. Saylor testified that the vehicle was occupied by two men, one of whom he later identified as Mains. He could not identify the other occupant. Saylor recorded the license number and later determined that the automobile was registered to F. W. Neil, Jr.

For reasons not clear on this record, the stakeout team left the area at 10:00 p. m. and did not return until 11:00 p. m. Upon their return, the investigators entered the building and found that the lock to the rear door had been forced open, that the screws holding the hasps of the lock to the post office door had been pried out, and that the edges of the safe door were bent. An audit of the post office property indicated that the following items were missing: the station stamp used in making money orders; a bank deposit stamp; postage stamps; money order blanks; a money order machine; and "bait money".[3]

A government witness, Mr. Farah, an apparent fence, testified that he was in Bruce's Liquors [4] at Five Points at 11:30 p. m., March 30, where he overheard a conversation between Smith, Mains and another person relating to some postal equipment that the defendants had in their possession. Farah informed the pair that he was interested in seeing the equipment. The two defendants and Farah then left Bruce's sometime after midnight and drove in a black Chevrolet to a house. Farah could not give the location other than as five minutes distant from Bruce's Liquors. There, Farah noticed the postal equipment and other items subsequently identified as missing from the Brookview station. The men loaded the equipment into the Chevrolet and returned to Bruce's where the equipment was transferred to another car, a red Pontiac. After Bruce's closed at 2:00 a. m., Farah and the owner of the Pontiac went to the Normandy Club.

Another government witness, Mrs. Neil, the owner of the black 1960 Chevrolet, testified that she had fallen asleep in Smith's apartment, a few blocks from Bruce's Liquors, at 8:30 p. m., March 30. When she awoke at 12:30 a. m. Mrs. Neil noticed that both Smith and her car were missing. Mrs. Neil then called Bruce's Liquors and located Smith. The appellant picked up Mrs. Neil at about 1:00 a. m. and the couple returned to Bruce's. After that establishment closed, they moved to the Normandy Club.

Mr. Farah, spotting Smith at the club, called Lieutenant Touchton of the Duval Sheriff's Department and informed him of the matter. Touchton went to the Normandy Club and, after sighting the Chevrolet which had been the subject of an all points bulletin, called Saylor. After the federal authorities arrived, Touchton placed Smith under arrest. A search of Smith and of the Chevrolet (with the permission of the car's owner, Mrs. Neil) revealed some of the "bait money" and a screwdriver and

3. Mr. Germano, the proprietor of Anthony's Five and Ten and contractor for the Brookview substation, testified that he recorded the serial numbers of currency kept in the safe. Mr. Germano explained that the purpose of this custom was to provide a "traceable" source in the event of a theft.

4. Also identified by some witness as Bruce's Bar or Bruce's Lounge.

a steel punch. A search[5] of the red Pontiac produced the money order machine. Mains was arrested at 7:00 a. m. A search of his home revealed other missing postal items, several punches, a sledgehammer, and two pry bars.

The appellant contends that three errors were committed in the proceedings below: First, the trial court erred in denying his motion for judgment of acquittal because the evidence was insufficient to sustain the jury's verdict. Second, the stolen property and the tools were improperly received in evidence as not connected to him by the evidence. Third, the trial court improperly instructed the jury as to the inferences which may be drawn from the possession of recently stolen property. We find that these contentions are without merit and affirm.

The appellant asserts that the evidence was insufficient on two grounds. First, that the evidence did not prove the existence of a forcible breaking as required by Title 18, U.S.C. Section 2115. Second, if a breaking did occur, that the evidence was insufficient to connect the appellant with the breaking.

■ We agree that the essence of the offense charged under Title 18, U.S.C. Section 2115, is the forcible breaking into a building used in whole or in part as a post office. Schwyhart v. United States, 8 Cir. 1936, 82 F.2d 725. It is that feature of the crime that gives the Congress the right to punish such offenses under the postal clause of Article I, Section 8, of the United States Constitution. Thus, to prove the corpus delecti there must be substantial evidence to show affirmatively and beyond a reasonable doubt that there was a breaking of such a building. The appellant contends that the government failed in this regard because there was no showing of the condition of the building

before the occurrence of the alleged breaking. He argues that although there was evidence of a breaking, the evidence was insufficient to prove that it occurred at the time in question because the government failed to demonstrate the pre-existing conditions of the building. In essence, he asks us to speculate that the conditions described by the investigative officers existed prior to the alleged breaking in this case.

■ Admittedly, the government offered no evidence of the pre-existing condition of the store. Mr. Germano, the proprietor, left early and did not close the store on March 30. He could not testify as to the conditions of the store at the time of closing. The investigative team, curiously, did not inspect the building prior to the discovery of the breaking at 11:00 p. m. Nonetheless, we conclude that the evidence was sufficient to prove that the building was broken into on the evening in question. Mr. Germano testified that "the door had been torn open". Detective Hill stated "[W]e entered the building through the door that was broken open, or was standing open, which appeared to be forcibly opened, and we went inside the building and observed the safe and the postal enclosure, broken up." Inspector Saylor provided the most illuminating description, "The rear door of the store was standing—was partially open, bearing evidence that the lock was forced. The screws holding the hasps of the lock had been pried out. There was evidence of this having been pried out with some kind of a pry tool." This testimony was sufficient to permit the jury to conclude that there had been a forcible breaking.

■ The evidence connecting Smith with the breaking is largely circumstantial. Accordingly, we must determine if the jury could reasonably exclude

5. Smith did not move, under Rule 41 F.R. Crim.P., to quash the search of either vehicle. At trial he objected to evidence of both searches and their fruits. No question as to either search is raised on appeal. In any case, it seems clear that he lacks standing to question either search. Jones v. United States, 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697 (1959) ; Alderman v. United States, 394 U.S. 165, 89 S.Ct. 961, 22 L.Ed.2d 176 (1969).

every hypothesis but that of guilt, viewing the evidence and the reasonable inferences therefrom in the light most favorable to the government. Sykes v. United States, 5 Cir. 1966, 373 F.2d 607.

█ From the testimony, the jury could reasonably infer that the black 1960 Chevrolet was a vital part of the scheme. Prior to the breaking, the vehicle was seen cruising slowly around the substation. The same car was used later to dispose of some of the fruits of the crime. Although Saylor could not identify Smith as an occupant of the 1960 Chevrolet, Mrs. Neil's testimony raises the strong inference that Smith had possession of the automobile at the time of the breaking. Further, Smith had possession of some of the fruits of the crime shortly after its commission. Smith had some of the "bait money" on his person five hours after it was taken. Farah's testimony shows that Smith attempted to dispose of some of the postal equipment missing from the Brookview station. Additionally a screwdriver and a punch were found in the back seat of the automobile. Mrs. Neil disavowed any knowledge of those tools. Unexplained possession of the fruits of a crime shortly after its commission may in itself be sufficient to justify an inference of guilt. See McNamara v. Henkel, 226 U.S. 520, 524–525, 33 S.Ct. 146, 57 L.Ed. 330 (1913); Nicholson v. United States, 5 Cir. 1966, 355 F.2d 80, 85; Masters v. United States, 8 Cir. 1965, 351 F.2d 105, 107; Harris v. United States, 9 Cir. 1958, 261 F.2d 897, 900. Of course, such evidence is no more than prima facie evidence of guilt but it may control if it is not explained by circumstances consistent with innocence. See Herman v. United States, 5 Cir. 1961, 289 F.2d 362.

We hold that the evidence considered as a whole was sufficient to justify the jury's finding of guilt as to Smith.

The second error alleged by the appellant is that the fruits of the crime and tools found in the black Chevrolet and in Mains' home should not have been admitted into evidence against Smith. The appellant argues that the post office property was improperly identified because Mr. Germano did not close the shop on the evening of the breaking and thus could not state that the post office items were in the building at the time of the closing. The appellant attacks the admission of the tools on the basis that no attempt was made to prove that they were used in the commission of the crime.

██ Essentially the appellant's argument is that the evidence does not prove what the government says it proves. The questions raised of whether or not the property was in the store at the time of the theft or whether the tools were actually used in the breaking go to the weight of the evidence rather than its admissibility. The probative weight of the evidence is a question for the jury to decide. United States v. Licausi, 5 Cir. 1969, 413 F.2d 1118; Vaccaro v. United States, 5 Cir. 1961, 296 F.2d 500. Since all of the items were properly identified and authenticated, we find no abuse of the discretion vested in the trial court regarding the receipt of evidence. Cf. Burns v. Beto, 5 Cir. 1966, 371 F.2d 598.

The third alleged error asserted by the appellant is that the trial court improperly instructed the jury as to the inferences which may be drawn from the possession of recently stolen property.[6]

---

6. The pertinent provision of the trial court's charge is:

"Possession of property recently stolen, if not satisfactorily explained, is ordinarily a circumstance from which the Jury may reasonably draw the inference and find in the light of surrounding circumstances shown by the evidence in the case that the person in possession knew the property to have been stolen, and possession of property recently stolen if not satisfactorily explained is also a circumstance from which the Jury may reasonably draw the inference and find in the light of surrounding circumstances shown by the evidence in the case that the person in possession not only knew it was stolen property but also participated in some way in the theft of the property."

The basis of the appellant's contention is that the instruction permitted the jury to draw an inference of guilt from the silence of the accused.

██ The charge read as a whole dispels any notion that the trial court's charge allowed the jury to make an adverse inference from the defendant's failure to testify. The judge in his general charge specifically instructed the jury that "the defendants are not bound to explain anything and their failure to explain anything connected with the case cannot be considered by you as a circumstance that tends to prove either of the defendants guilty". This admonition refutes the appellant's suggestion that the jury was permitted to infer guilt from the defendant's failure to take the stand and explain his possession of recently stolen property.

Although the instructions given here adequately protected the defendant's right to remain silent, a better procedure would be for the court to instruct the jury carefully as to the meaning of "unexplained" possession as was done in Ashley v. United States, 5 Cir. 1969, 413 F.2d 249 and Orser v. United States, 5 Cir. 1966, 362 F.2d 580. In those cases, the courts carefully stated that "possession may be satisfactorily explained through other circumstances, other evidence, independent of any testimony of the accused". Those courts also reiterated that the defendant had an absolute right not to testify and that the jury could make no inference of guilt or innocence from the defendant's failure to take the stand and testify.

The instruction here falls short of the "model charge" given in *Ashley* and *Orser* because there was no attempt to state how possession might be explained. Nonetheless, we find no error because the charge, read as a whole, was adequate to protect the right of the accused to remain silent.

Affirmed.