Patrick Mac **McABEE**, Appellant,

v.

**UNITED STATES** of America, Appellee.

No. 25112.

United States Court of Appeals,
Ninth Circuit.

Nov. 20, 1970.

Allin H. Pierce, Jr., San Francisco, Cal. (argued), for McAbee.

James Earl House in pro. per.

Richard V. Boulger (argued), Asst. U. S. Atty., Dwayne Keyes, U. S. Atty., Fresno, Cal., for appellee.

Before HUFSTEDLER, WRIGHT and TRASK, Circuit Judges.

HUFSTEDLER, Circuit Judge:

Appellant appeals from his conviction upon multiple counts of an indictment charging him with violating 18 U.S.C. § 922(i) (interstate transportation of stolen firearms) and 18 U.S.C. § 922(j) (sale of stolen firearms transported in interstate commerce).

He challenges the constitutional validity of instructions to the jury that (1) from proof of his possession of recently stolen guns, if not satisfactorily ex-

plained, the jury could infer that he knew that the guns had been stolen, and (2) from proof of his possession in one state of guns that had been recently stolen in another state, if not satisfactorily explained, the jury could infer that he not only knew that the guns were stolen, but also that he had transported them or caused them to be transported in interstate commerce.[1]

There was direct evidence that the 23 guns in question were stolen from a ranch house in Nevada between January 14 and February 6, 1969, when the house was temporarily unoccupied. Appellant had been briefly employed on the ranch some time before the theft. Appellant and his codefendant sold some of the guns in California. They had the remaining guns with them on a meandering trip from California to Iowa and Georgia during the latter part of January 1969. Appellant, testifying in his own defense, gave an elaborate explanation about the innocent circumstances in which he claimed that he and his friend had purchased the guns. The jury did not believe him.

Among the elements of the offenses charged, the Government had to prove beyond a reasonable doubt that appellant knew that the guns were stolen and that he knowingly transported them in interstate commerce or caused them to be thus transported. The inferences of which he complains were relevant to prove both the knowledge and transportation elements.

Appellant recognizes that, in order to prevail, he must scale a wall of authority approving the instructions. The substance of the first was accepted by the Supreme Court in 1896 in Wilson v. United States, 162 U.S. 613, 619, 16 S. Ct. 895, 898, 40 L.Ed. 1090, holding that "[p]ossession of the fruits of crime, recently after its commission, justifies an inference that the possession is guilty

possession, and, though only *prima facie* evidence of guilt, may be of controlling weight, unless explained by the circumstances or accounted for in some way consistent with innocence." The principle was reaffirmed in Rugendorf v. United States (1964) 376 U.S. 528, 84 S.Ct. 825, 11 L.Ed.2d 887. Our Circuit has consistently approved both instructions in a line of cases led by Corey v. United States (9th Cir. 1962) 305 F.2d 232, cert. denied (1963) 371 U.S. 956, 83 S.Ct. 511, 9 L.Ed.2d 503.

But, he argues, these cases should be reexamined in the light of Leary v. United States (1969) 395 U.S. 6, 89 S. Ct. 1532, 23 L.Ed.2d 57 and Turner v. United States (1970) 396 U.S. 398, 90 S.Ct. 642, 24 L.Ed.2d 610, invalidating the statutory inferences drawn, respectively, from possession of marihuana and possession of cocaine. Appellant's argument is (1) that the inferences that he attacks do not meet the test of rationality laid down in *Leary* and *Turner*; (2) that, even if they did, the inferred facts cannot be said to follow "beyond a reasonable doubt"; (3) that the instructions were constitutionally infirm because they, in effect, shifted the burden of going forward with proof to the defendant, in violation of his Fifth Amendment right not to incriminate himself and his Sixth Amendment right of confrontation.

We dispose of his last contention first. It is a paraphrase of the views of Mr. Justice Black, with whom Mr. Justice Douglas joined, dissenting in *Turner*. These views were not adopted by the majority of the Court. We, of course, adhere to the controlling opinion.

The difficulty with appellant's argument is that it confuses an inference with a rebuttable presumption. A rebuttable presumption is the means by which a rule of substantive law is invoked to *compel* the trier of fact to reach a par-

---

1. The actual text of the instruction was much more fully developed; the instructions were drawn from § 10.10, Mathes & Devitt, Fed.Jury Pract. and Instr. [now substantially embodied in § 13.11, Devitt & Blackmer, Fed.Jury Pract. and Instr. (2d ed. 1970)].

ticular conclusion, in the absence of contrary evidence, once the facts constituting its hypothesis are established. (9 J. Wigmore, Evidence (3d ed. 1940) § 2491, at 288–89.) An inference, on the other hand, is no more than a logical tool enabling the trier of fact to proceed from one fact to another if the trier believes that the weight of the evidence and the experiental accuracy of the inference warrant so doing. The rebuttable presumption forces the defendant to come forth or to suffer certain defeat on the issue involved. An inference does not put the defendant in such a position. It does not shift the burden of going forward to the defendant, for the trier of fact is left free to reject the inference in part or in whole. Nor does it change the burden of persuasion or relieve the Government of its obligation to prove each element of the crime beyond a reasonable doubt. (9 J. Wigmore, *supra* § 2513, at 417–24). Of course, there will often be times when the overall weight of evidence or the compellingly reasonable nature of the inference will make the defendant feel forced to speak. An inference can have this effect, however, not by operation of law, but only by close conformity with human observation. A defendant has no more right to complain of a properly instructed and rational inference than he does to complain of the laws of physics. In this case, as in *Turner*, the jury was so instructed.[2]

▇ Appellant, however, also challenges the instructions on the grounds that the inference involved was irrational and hence should not have been considered by the jury. For this argument, appellant relies upon the Supreme Court's actions in *Leary* and *Turner* in striking down inferences because it could not "be said with substantial assurance that the presumed fact [knowledge of illegal importation of marihuana and cocaine] is more likely than not to flow from the proved fact [possession of the drug] on which it was made to depend." (395 U.S. at 36, 89 S.Ct. at 1548.) The question, therefore, is whether there is substantial assurance that from proof that appellant possessed recently stolen guns, if not satisfactorily explained, it is more likely than not appellant knew that the guns had been stolen.

From the earliest days of our jurisprudence, proof that a person possessed recently stolen goods has been held relevant to prove that the possessor was the thief. Other explanations for his possession are possible; "nevertheless, the hypothesis that he was the taker is a sufficiently natural one to allow the fact of his possession to be considered evidentiary. There has never been any question of this." (1 J. Wigmore, Evidence (3d ed. 1940) § 152, at 598.) From the fact that the possessor is the thief, the conclusion follows inescapably that he knew the goods were stolen and participated in their transportation from the site of the theft. (Corey v. United States, *supra*, 305 F.2d at 238.) The inferences appellant challenges meet the *Leary-Turner* due process test.

Appellant's final attack is really on the sufficiency of the evidence, claiming that, even if the inferences of knowledge

---

2. If the trial court's instructions could have been read as actually raising a presumption, rather than outlining an inference, the outcome of this appeal might have been different. In Bollenbach v. United States (1946) 326 U.S. 607, 66 S.Ct. 402, 90 L.Ed. 350, the Supreme Court reversed a conviction for conspiracy to violate the National Stolen Property Act because the district court erroneously charged the jury that the petitioner's possession of property in one state that had been recently stolen in another "raises a presump-

tion that the possessor was the thief and transported stolen property in interstate commerce." *Bollenbach* has repeatedly been interpreted as condemning the use of the language of presumption in such cases. *(E. g.,* Harding v. United States (8th Cir. 1964) 337 F.2d 254; Travers v. United States (1964) 118 U.S.App.D.C. 276, 335 F.2d 698; Bray v. United States (1962) 113 U.S.App.D.C. 136, 306 F.2d 743; Herman v. United States (5th Cir. 1961) 289 F.2d 362; Battaglia v. United States (4th Cir. 1953) 205 F.2d 824.)

and of transportation are reasonable, they are not so compelling as to support a jury verdict that requires a finding beyond a reasonable doubt. Appellant does not, however, have a good case upon which to base such an attack, for the Government did not rely solely upon the inferences to establish this part of its case. The fact that appellant had been employed at the ranch of the robbery victim supports the inference that he was the thief or that he recognized the rifles and knew that they were stolen. Ample evidence was introduced to show that defendant carried the weapons over any number of state lines. Moreover, the inferences involved here are no less compelling than the inference approved in *Turner*, that possessors of heroin knew of its illegal importation because no heroin is produced domestically. We cannot say that the jury could not have found all the elements of the crimes charged beyond a reasonable doubt.

The judgment is affirmed.