**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Joseph MELTZER, Defendant-Appellant.**

**No. 78–5396**
**Summary Calendar.***

United States Court of Appeals,
Fifth Circuit.

Feb. 28, 1979.

Roger B. Colton (Court-appointed), Philip G. Butler, Jr., West Palm Beach, Fla., for defendant-appellant.

Jack V. Eskenazi, U. S. Atty., Karen L. Atkinson, Linda Collins Hertz, Asst. U. S. Attys., Miami, Fla., for plaintiff-appellee.

Before AINSWORTH, GODBOLD and VANCE, Circuit Judges.

---

* Rule 18, 5 Cir.; *see Isbell Enterprises, Inc. v. Citizens Casualty Co. of New York et al.,* 5 Cir., 1970, 431 F.2d 409, Part I.

AINSWORTH, Circuit Judge:

Appellant Joseph Meltzer was convicted after a jury trial on each count of a three-count indictment that charged him with transporting stolen stock certificates valued at more than $5,000 in interstate commerce knowing them to be stolen in violation of 18 U.S.C. §§ 2314 and 2, with receiving, concealing, selling, and disposing of the certificates knowing them to be stolen in violation of 18 U.S.C. §§ 2315 and 2, and with conspiring to commit the above offenses in violation of 18 U.S.C. § 371. He was sentenced to serve concurrent sentences of thirty months on each count and appeals. We affirm.

The sole issue on appeal concerns the sufficiency of the evidence to establish that appellant acted with knowledge that the stock certificates were stolen. He stipulated at trial that the eighteen stock certificates involved in this case, each representing 100 shares of McDonald Corporation common stock, had been stolen from the New York offices of Smith, Barney, Harris, Upham and Company, Inc. on or about January 7, 1977.

From competent and credible evidence introduced at trial the jury could have found the following facts. In the spring of 1977 appellant owed over $35,000 to a New York loan shark called Black Sam and was in arrears in his payments. In order to make some money appellant contacted Chariot Funding Group, a New York company headed by a man named Sonny who was known by appellant to have connections with organized crime. In August 1977, Sonny called appellant to inform him that a man named Robert Reid[1] would be traveling to Florida with some stock that Sonny wanted to unload. Meltzer met Reid at the Fort Lauderdale Airport on or about August 29 and Reid gave him a certificate representing 100 shares of McDonald stock.

On August 30 appellant took this certificate to the Boca Raton National Bank where he sought to use it as collateral for a loan. Rosemary Rutherford, the bank's senior vice president and cashier, told him that the bank would lend 50 per cent of the market value of the stock if a check disclosed nothing wrong with the certificate. Meltzer indicated that he had a total of approximately 1,900 shares of McDonald stock, worth between $90,000 and $100,000, against which he wanted to borrow about $50,000. He left the one certificate with the bank for the necessary check. When appellant returned the next day, Rutherford informed him that, although a check had uncovered no problems with the certificate, the bank would not lend against it because it was registered to a street name and not to appellant.

On or about September 26 appellant approached Louis Gonzales, the owner of a retirement home and a construction business with whom he was casually acquainted, and offered to sell $90,000 to $100,000 of McDonald stock for $50,000. Meltzer explained that he needed money and that it would take too long to sell the stock through "legal channels." Gonzales did not believe that he could afford to purchase the securities himself but offered to check one of the certificates and look for a buyer. Appellant gave Gonzales the same certificate that he had earlier presented to the Boca Raton National Bank.

Gonzales took the certificate to a friend and former relative, Ramon Catalona, an investigator for the Securities and Exchange Commission, to determine if it was stolen or forged. A few days later Gonzales was visited by Catalona and FBI Agents Willis Walton and Welton Merry, who directed him to contact appellant to arrange a meeting for the purchase of the stock certificates. Although Meltzer did not have the securities on hand when Gonzales called to report that he had found a buyer, appellant indicated that he could obtain the securities that day. Later that day appellant arranged with Gonzales to meet the prospective "buyers" the following day,

---

1. Reid was indicted with Meltzer and in a separate trial was convicted of transporting stolen securities and of conspiring to transport stolen securities. His conviction was affirmed in *United States v. Reid,* 5 Cir., 1978, 586 F.2d 393.

September 30, at the Clock Restaurant in Boynton Beach, Florida to consummate the sale.

Accordingly, Agents Walton and Merry, posing as buyers, met appellant at the Clock Restaurant on the morning of September 30 and negotiated the purchase of eighteen 100-share McDonald stock certificates for $47,500. The market value of this stock was approximately $95,000. Meltzer told the agents that if the sale went smoothly he had access to millions of dollars in other securities that were "completely cool." On the way out to the restaurant's parking lot to get the money from the agents' car, Walton asked appellant to identify a man who had closely watched the entire negotiation. Meltzer tried to reassure Walton and waved over the man who then introduced himself as Bob and explained that he was the courier who had brought the stuff in from New York. This man was Robert Reid.

After Walton and Merry paid appellant for the stock certificates other FBI agents arrested both him and Reid. Meltzer was to have received $3,000 for his part in the transaction while Reid was to take the balance of the money to Sonny in New York.

Appellant contends that the evidence was insufficient to establish that he undertook the sale of the stock certificates with knowledge that they were stolen. Although he moved for a judgment of acquittal at the conclusion of the Government's case, he failed to renew the motion at the close of all the evidence. We, therefore, consider that he waived any objection to the denial of the motion. Appellate review in this circumstance is limited to a determination of whether the affirmance of appellant's conviction would entail a manifest miscarriage of justice. *United States v. Juarez,* 5 Cir., 1978, 566 F.2d 511, 512–13; *United States v. Perez,* 5 Cir., 526 F.2d 859, 863–64, *cert. denied,* 429 U.S. 846, 97 S.Ct. 129, 50 L.Ed.2d 118 (1976); *United States v. Jones,* 5 Cir., 1973, 486 F.2d 1081, 1082.

Applying this standard to the evidence in this case, we find no miscarriage of justice. The highly unusual circumstances surrounding Meltzer's acquisition and attempted disposal of the securities coupled with the enormous discount at which they were offered for sale could have justified the jury in concluding that appellant acted with knowledge that the stock certificates were stolen. Appellant argues strenuously that the fact that he allowed the Boca Raton National Bank and Gonzales to check a certificate indicates that he did not believe them to be stolen. The jury, however, could reasonably have concluded that any person trying to reintroduce stolen securities into the channels of legitimate commerce had to be prepared to expose himself to certain risks. Appellant's conviction is, therefore,

AFFIRMED.