UNITED STATES of America,
Plaintiff-Appellant,

v.

Robert E. BURNS and Margaret Ann
Green, Defendants-Appellees.

No. 78–2624.

United States Court of Appeals,
Fifth Circuit.

June 28, 1979.

J. R. Brooks, U. S. Atty., Bill L. Barnett, Asst. U. S. Atty., Birmingham, Ala., for plaintiff-appellant.

W. Jason Uchitel, Atlanta, Ga., for defendants-appellees.

Before TUTTLE, TJOFLAT and HILL, Circuit Judges.

JAMES C. HILL, Circuit Judge.

This is an appeal by the Government from judgments of acquittal entered after a jury found the Appellees guilty of violating the National Motor Vehicle Theft Act. 18 U.S.C.A. §§ 2312 and 2313. The sole issue on appeal is whether the Government produced sufficient evidence to establish Appellees' knowledge of the stolen character of the vehicles involved. Since the District Court applied an incorrect measure of the sufficiency of the evidence and the evidence was sufficient to support the jury's verdict, we vacate and order the entry of judgments on the guilty verdicts.

Appellee Burns, his daughter Appellee Green, and Harold Lang were indicted for transporting, receiving and selling four stolen Cadillac automobiles. Lang pled guilty and testified at the Appellees' trial. Burns and Green were found guilty by the jury. They both moved for a judgment of acquittal after the Government's evidence, again after all the evidence and again after the jury's verdict. The District Court granted the last motions and attempted to grant the motions made at the close of the evidence *nunc pro tunc.*

At trial the Government proved that the four automobiles were stolen in New York. Lang testified that while unemployed and living in Orlando, Florida he was contacted by a man about selling a late model Cadillac for a commission. Lang called Burns, a casual acquaintance, in Huntsville, Alabama, since he recalled that Burns had once been in the automobile retail business. He offered the automobile, a 1976 Cadillac Seville, to Burns for $6,500. Burns flew to Orlando, paid the $6,500 without any further negotiation and drove it back to Huntsville. At that time, Lang assured Burns that the automobile was not stolen and repeated what he had been told: it had been repossessed in New York. Lang received $1,000 for his efforts.

Lang sold three more 1976 Cadillacs to Burns in the following few weeks for less than their wholesale value.[1] Lang drove the three Cadillacs to Huntsville and delivered them to Burns. During these transactions Lang never indicated that the automobiles were stolen. He testified that he himself did not then know they were stolen for, in his position, he did not want to ask. Lang only dealt directly with Burns; he never dealt with Green. Lang furnished title documents to Burns which reflected that third persons, unknown to either, were the former owners of the vehicles.

Initially, we note that this Government appeal from these judgments of acquittal entered after a jury verdict is permissible under 18 U.S.C.A. § 3731. The District Court's attempt to grant the motions for judgment of acquittal made after the close of all the evidence *nunc pro tunc* came after the jury's verdict. The *nunc pro tunc* granting of these motions is treated the same as the granting of the motions made and granted after the jury's verdict. Since reversal would require only the reinstatement of the guilty verdicts of the fact finder and Appellees would not be subjected to a new trial, the Government may appeal. *See United States v. Jenkins,* 420 U.S. 358, 95 S.Ct. 1006, 43 L.Ed.2d 250 (1975); *United States v. Scott,* 437 U.S. 82, 98 S.Ct. 2187, 57 L.Ed.2d 65 (1978); *Sanabria v. United States,* 437 U.S. 54, 98 S.Ct. 2170, 57 L.Ed.2d 43 (1978); *United States v. Martin Linen Supply Company,* 430 U.S. 564, 97 S.Ct. 1349, 51 L.Ed.2d 642 (1977); *United States v. Clemones,* 577 F.2d 1247 (5th Cir. 1978); *United States v. Boyd,* 566

---

1. The price Burns paid Lang, wholesale value, and retail market value of the four Cadillacs are as follows:

| Cadillac | Price | Wholesale Value | Market Value |
|---|---|---|---|
| # 1 | $ 6,500 | $7,290–$7,795 | $ 9,800 |
| # 2 | $ 5,500 | $5,755–$6,500 | $ 8,275 |
| # 3 and # 4 | $13,000 for both | $7,800 $8,125 | $ 9,800 $10,150 |

F.2d 929 (5th Cir. 1978); *United States v. Cravero*, 530 F.2d 666 (5th Cir. 1976). Of course, had the District Court granted either the motions made at the close of the Government's case or the motions made at the close of all the evidence *before* the jury returned a guilty verdict, the matter would have ended then and there.

■ The test outlined by this Court when a trial court rules on a motion for judgment of acquittal challenging the sufficiency of the evidence applies to such motions whether made at the close of the Government's case, at the close of all the evidence, or after the return of a guilty verdict. The District Court must determine whether the relevant evidence, viewed in the light most favorable to the Government, could be accepted by a reasonably-minded jury as adequate and sufficient to support the conclusion of the defendant's guilt beyond a reasonable doubt. The same test applies whether the evidence is direct or circumstantial. All reasonable inferences which tend to support the Government's case must be accepted. Any conflicts in the evidence must be resolved in the Government's favor. *See, e. g., United States v. Austin*, 585 F.2d 1271, 1273 (5th Cir. 1978); *United States v. Teal*, 582 F.2d 343 (5th Cir. 1978); *United States v. Bibbs*, 564 F.2d 1165 (5th Cir. 1977); *United States v. Warner*, 441 F.2d 821 (5th Cir.), *cert. denied*, 404 U.S. 829, 92 S.Ct. 65, 30 L.Ed.2d 58 (1971). This test has also been formulated as: ". . . whether the jury might reasonably conclude that the evidence, viewed in the light most favorable to the prosecution, is inconsistent with every reasonable hypothesis of the accused's innocence." *United States v. Fredericks*, 586 F.2d 470, 474 (5th Cir. 1978) (citations omitted). *See also, e. g., United States v. Barrentine*, 591 F.2d 1069 (5th Cir. 1979); *United States v. Evans*, 572 F.2d 455 (5th Cir.), *cert. denied sub nom. Tate v.*

*United States*, —— U.S. ——, 99 S.Ct. 200, 58 L.Ed.2d 182 (1978); *United States v. Prout*, 526 F.2d 380 (5th Cir. 1976). A third formulation is similar: the District Court must determine whether, viewing the evidence in the light most favorable to the Government, the jury must necessarily entertain a reasonable doubt as to the guilt of the defendant. *See, e. g., United States v. Soto*, 591 F.2d 1091, 1101 n.7 (5th Cir. 1979); *United States v. Iverson*, 588 F.2d 194 (5th Cir. 1979); *United States v. Garza*, 574 F.2d 298, 304 n.11 (5th Cir. 1978). *United States v. Duckett*, 550 F.2d 1027, 1030 (5th Cir. 1978).[2] These same three formulations apply to appellate claims of insufficient evidence, which require this Court to determine whether the District Court properly disposed of the motion for judgment of acquittal.

■ Before reaching the merits of the claimed insufficiency of the evidence here, we note that the District Court applied an incorrect analysis. It readily appears from the District Court's bench ruling that it substituted its own subjective interpretation of the evidence for that of the jury's by assessing the credibility of witnesses and the Appellees' characters. The Supreme Court has specifically disapproved such weighing of evidence and assessments of witnesses' credibility by the trial court when deciding the merits of these motions. *Burks v. United States*, 437 U.S. 1, 16–17, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978). *See also United States v. Johnson*, 489 F.2d 139 (5th Cir. 1974). Recently, this Court held:

> It is not properly the function of the court, in ruling on such a motion, to assess the credibility of witnesses, weigh the evidence, or substitute its own judgment as to the guilt or innocence for that of the jury.
>
> .    .    .    .    .
>
> [O]nce the government's evidence has passed the test of legal sufficiency, a trial

---

2. For a critique of this Court's efforts at evolving this standard in cases involving circumstantial evidence, *see* C. Wright, Federal Practice and Procedure § 467 and cases cited. *See, e. g., United States v. Smith*, 546 F.2d 1275, 1284 (5th Cir. 1976); *United States v. Moore*, 505 F.2d 620, 623 (5th Cir. 1974), *cert. denied*, 421

U.S. 918, 95 S.Ct. 1581, 43 L.Ed.2d 785 (1975). *United States v. Jones*, 418 F.2d 818 (8th Cir. 1969). The evolution appears complete. *See, e. g., United States v. Barrentine*, 591 F.2d 1069 (5th Cir. 1979); *United States v. Zule*, 581 F.2d 1218 (5th Cir. 1978); *United States v. Stewart*, 579 F.2d 356 (5th Cir. 1978).

judge is without authority to enter a judgment of acquittal "simply because he thinks that course would be most consonant with the interests of justice."

*United States v. Brown*, 587 F.2d 187, 190–91 (5th Cir. 1979) (citations omitted). *See also United States v. Cravero*, 530 F.2d 666 (5th Cir. 1976); *United States v. Weinstein*, 452 F.2d 704 (2d Cir. 1971), *cert. denied*, 406 U.S. 917, 92 S.Ct. 1766, 32 L.Ed.2d 116 (1972). We hold that the evidence was sufficient here.

In seeking to overturn the grant of the judgments of acquittal on the merits, the Government relies heavily on the inference of guilty knowledge permissible from the unexplained possession of recently stolen property.

Possession of the fruits of crime, recently after its commission, justifies the inference that the possession is guilty possession, and, though only *prima facie* evidence of guilt, may be of controlling weight unless explained by the circumstances or accounted for in some way consistent with innocence.

*Wilson v. United States*, 162 U.S. 613, 619, 16 S.Ct. 895, 898, 40 L.Ed. 1090 (1896). This ancient common law inference[3] has been approved by the Supreme Court,[4] by all of our sibling Circuits,[5] and by this Court in a long line of cases.[6] The common law logical derivation of this inference is quite simple. One found in unexplained possession of recently stolen property likely is the thief or privy to the theft. Therefore, guilt may be inferred from the fact of possession.

As it has evolved, this inference has played a most significant role in prosecutions under the National Motor Vehicle Theft Act, commonly known as the Dyer Act. 18 U.S.C.A. §§ 2311–2313. Basically, the Act makes it a criminal offense to

3. The common law origins and history of this concept, have been well-chronicled. *See e. g., Barnes v. United States*, 412 U.S. 837, 93 S.Ct. 2357, 37 L.Ed.2d 380 (1973); *United States v. Bamberger*, 456 F.2d 1119 (3d Cir.), *cert. denied*, 406 U.S. 969, 92 S.Ct. 2424, 32 L.Ed.2d 668 (1972). *United States v. Jones*, 418 F.2d 818 (9th Cir. 1969); *Pendergrast v. United States*, 135 U.S.App.D.C. 20, 416 F.2d 776, *cert. denied*, 395 U.S. 926, 89 S.Ct. 1782, 23 L.Ed.2d 243 (1969). *See generally* LaFave & Scott, Criminal Law § 21 (1972); McCormick on Evidence § 344 (Cleary ed. 1972); Wharton's Criminal Evidence § 139 (13th ed. 1972); Wigmore On Evidence § 2513 (3d ed. 1940); Annotation, 15 A.L.R.Fed. 856 and cases cited.

4. *See, e. g., Barnes v. United States*, 412 U.S. 837, 93 S.Ct. 2357, 37 L.Ed.2d 380 (1973); *Bollenbach v. United States*, 326 U.S. 607, 66 S.Ct. 402, 90 L.Ed. 350 (1946); *McNamara v. Henkel*, 226 U.S. 520, 33 S.Ct. 146, 57 L.Ed. 330 (1913); *Wilson v. United States*, 162 U.S. 613, 16 S.Ct. 895, 40 L.Ed. 1090 (1896). Constitutional challenges based on the Due Process and Self-Incrimination Clauses of the Fifth Amendment have been singularly unsuccessful. *See, e. g., Barnes v. United States*, 412 U.S. 837, 93 S.Ct. 2357, 37 L.Ed.2d 380 (1973); *United States v. Gainey*, 380 U.S. 63, 85 S.Ct. 754, 13 L.Ed.2d 658 (1965); *United States v. Tavoularis*, 515 F.2d 1070 (2d Cir. 1975); *United States v. Gardner*, 454 F.2d 534 (9th Cir.), *cert. denied*, 409 U.S. 867, 93 S.Ct. 164, 34 L.Ed.2d 116 (1972); *Young v. Wainwright*, 439 F.2d 426 (5th Cir.), *cert. denied*, 404 U.S. 914, 92 S.Ct. 232, 30 L.Ed.2d 189 (1971); *McAbee v. United*

States, 434 F.2d 361 (9th Cir. 1970); *United States v. Johnson*, 140 U.S.App.D.C. 54, 433 F.2d 1160 (1970). *See also* authorities cited in note 3, *supra*.

5. *See, e. g., United States v. DeFillipo*, 590 F.2d 1228 (2d Cir. 1979); *United States v. Brightwell*, 563 F.2d 569 (3d Cir. 1977), *cert. denied*, —— U.S. ——, 99 S.Ct. 151, 58 L.Ed.2d 151 (1978); *United States v. Brown*, 541 F.2d 858 (10th Cir.), *cert. denied*, 429 U.S. 1026, 97 S.Ct. 650, 50 L.Ed.2d 630 (1976); *United States v. Long*, 538 F.2d 580 (4th Cir. 1976); *United States v. Solimine*, 536 F.2d 703 (6th Cir. 1976), *cert. denied*, 430 U.S. 918, 97 S.Ct. 1333, 51 L.Ed.2d 596 (1977); *United States v. Knight*, 535 F.2d 1059 (8th Cir. 1976); *United States v. Farnkoff*, 535 F.2d 661 (1st Cir. 1976); *United States v. Brown*, 535 F.2d 424 (8th Cir. 1976); *United States v. McGregor*, 529 F.2d 928 (9th Cir. 1976); *United States v. Carter*, 173 U.S. App.D.C. 54, 522 F.2d 666 (1975); *United States v. Johnson*, 515 F.2d 730 (7th Cir. 1975).

6. *See, e. g., United States v. Meltzer*, 590 F.2d 607 (5th Cir. 1979); *United States v. Carter*, 491 F.2d 625 (5th Cir. 1974); *Beufe v. United States*, 374 F.2d 235 (5th Cir. 1967); *Barfield v. United States*, 229 F.2d 936 (5th Cir. 1956); *Yielding v. United States*, 173 F.2d 46 (5th Cir. 1949); *Janow v. United States*, 141 F.2d 1017 (5th Cir. 1944); *Levi v. United States*, 71 F.2d 353 (5th Cir. 1934); *Shuman v. United States*, 16 F.2d 457 (5th Cir. 1927). *See also* cases from our Circuit cited *infra*.

transport in interstate commerce a motor vehicle with knowledge that it has been stolen and also makes it an offense to receive, conceal, store, barter, sell or dispose of a motor vehicle with knowledge of its stolen character. Therefore, the Government is required by the nature of the offense to establish the mental element of guilty knowledge concomitant with the conduct proscribed in the Act. The inference is most often used to help establish this mental element which necessarily must be proven by circumstantial evidence and inference. From the historical notion that someone unable to explain the possession of recently stolen property is likely the thief, the courts today infer the possessor's guilty knowledge irrespective of the identity of the real thief. Thus, guilty possession may be inferred from · unexplained possession. This Court has held:

> To obtain a conviction the government needed only to establish that, at the time he took possession of the automobiles, defendant knew that they had been stolen. . . . This Court has held that the requisite knowledge that a vehicle

has been ·stolen "may be established by circumstantial evidence and that possession of a stolen vehicle recently after its theft justifies the inference that the possession is guilty possession. This evidence may be of controlling weight unless it can be explained in some way consistent with innocence."

*United States v. Carter*, 491 F.2d 625, 629 (5th Cir. 1974) (citations omitted).

■ In its brief and at oral argument, the Government attacks the judgments of acquittal on two levels. First, the Government contends that once evidence establishing possession of recently stolen property is adduced a motion for judgment of acquittal can never be entered, irrespective of the facts portrayed by the remaining evidence. Second, the Government contends that the District Court erred in granting the motion for judgment of acquittal after the jury's verdict because here all the evidence, taken in the proper light along with permissible inferences, could support a reasonable jury's verdict of guilty beyond a reasonable doubt. We base our holding on the Government's second contention.[7]

7. Since this case does not present the issue, we do not decide whether proof of the possession of recently stolen property without more and irrespective of the remaining evidence requires the trial court to deny all motions for a judgment of acquittal.

Despite a few editorial lapses, this Court only affords the common law rule under discussion the status of an inference; it is not a presumption. There is a significant difference. An inference is a conclusion which the law *permits* the jury to draw if it finds a given set of facts; a presumption, on the other hand, is a conclusion which the law *directs* the jury to draw from the facts. *See, e. g., Herman v. United States*, 289 F.2d 362 (5th Cir.), *cert. denied*, 368 U.S. 897, 82 S.Ct. 174, 7 L.Ed.2d 93 (1961); *Barfield v. United States*, 229 F.2d 936 (5th Cir. 1956). *See also, e. g., Barnes v. United States*, 412 U.S. 837, 93 S.Ct. 2357, 37 L.Ed.2d 380 (1972); *United States v. Smith*, 502 F.2d 1250 (5th Cir. 1974); *United States v. Bamberger*, 456 F.2d 1119 (3d Cir.), *cert. denied*, 406 U.S. 969, 92 S.Ct. 2424, 32 L.Ed.2d 668 (1972); *Pendergrast v. United States*, 135 U.S.App.D.C. 20, 416 F.2d 776, *cert. denied*, 395 U.S. 926, 89 S.Ct. 1782, 23 L.Ed.2d 243 (1969); *Smith v. United States*, 413 F.2d 1121 (5th Cir. 1969); *McAbee v. United States*, 434 F.2d 361 (9th Cir. 1970); *Bray v. United States*, 113 U.S.App.D.C. 136, 306 F.2d 743 (1962). A defendant is always clothed with the presumption of innocence. The burden of proof never shifts to the defendant; a defendant may be acquitted without offering any evidence at all if the jury is convinced that the Government has failed to establish guilt beyond a reasonable doubt. *Johnson v. Wright*, 509 F.2d 828 (5th Cir.), *cert. denied*, 423 U.S. 1014, 96 S.Ct. 445, 46 L.Ed.2d 384 (1975); *United States v. McGalamory*, 441 F.2d 130 (5th Cir. 1971). The inference is permissible only when the possession of recently stolen property is unsatisfactorily explained, and this is a typical jury question. *Barnes v. United States*, 412 U.S. 843, 845 n.9, 93 S.Ct. 2357, 37 L.Ed.2d 380 (1973); *United States v. Penner*, 425 F.2d 729 (5th Cir. 1970); *United States v. Rawls*, 421 F.2d 1285, 1287 n.2 (5th Cir. 1970); *United States v. Teresa*, 420 F.2d 13 (4th Cir. 1969), *cert. denied*, 397 U.S. 1063, 90 S.Ct. 1498, 25 L.Ed.2d 684 (1970); *Travers v. United States*, 118 U.S.App.D.C. 276, 335 F.2d 698 (1964); *Brubaker v. United States*, 183 F.2d 894 (6th Cir. 1950). A defendant's explanation does not necessarily overcome the inference. *See, e. g., United States v. Casey*, 540 F.2d 811 (5th Cir. 1976); *United States v. Penner*, 425 F.2d 729 (5th Cir. 1970); *Odom v. United States*, 377 F.2d 853 (5th Cir. 1967); *Pilgrim v.*

■ As we have noted, it readily appears from the District Court's bench ruling that the trial court improperly substituted its own subjective interpretation of the evidence for the verdict of the jury. We are convinced that the evidence here, viewed in the light most favorable to the Government together with all reasonable inferences, made a case for the jury and was sufficient to support the guilty verdict.

United States, 266 F.2d 486 (5th Cir. 1959); Loftus v. United States, 46 F.2d 841 (5th Cir. 1931). However, this may not necessarily mean that the inference always overcomes any and all other evidence. If the Government were correct, then no motion for judgment of acquittal could be granted in such a case once the possession was established. And, since the standard of review is the same, no claim of insufficient evidence of guilty knowledge could be considered well-founded on appeal. We recognize that there is language in our opinions which seems to support this view. See, e. g., United States v. Mann, 557 F.2d 1211, 1217 n.7 (5th Cir. 1977); United States v. Fairchild, 505 F.2d 1378, 1381 (5th Cir. 1975); United States v. Johnson, 489 F.2d 139, 142 (5th Cir. 1974); United States v. Stanley, 433 F.2d 637, 639 (5th Cir. 1970). Since we do not decide the issue we need not examine these and other precedents closer.

We do note, however, that the inference must be considered and weighed along with the other evidence; it does not evaporate once an explanation appears. See, e. g., United States v. Jones, 434 F.2d 232 (5th Cir. 1970); Moody v. United States, 377 F.2d 175 (5th Cir. 1967); Herman v. United States, 289 F.2d 362 (5th Cir.), cert. denied, 368 U.S. 897, 82 S.Ct. 174, 7 L.Ed.2d 93 (1961); Yielding v. United States, 173 F.2d 46 (5th Cir. 1949). Furthermore, the evidentiary basis upon which the inference rests must be carefully evaluated. The factual setting must always provide a reasonable basis for application of the inference. Besides the need that the possession be unexplained or unsatisfactorily explained, the requirements that the defendant possessed the stolen property and possessed it recently after the theft are jury questions. Yet, this Court has often considered claims of insufficient evidence of the identity of the car, or the defendant's possession or the timeliness of the possession. See, e. g., United States v. Martinez, 466 F.2d 679 (5th Cir. 1972), cert. denied, 414 U.S. 1065, 94 S.Ct. 571, 38 L.Ed.2d 469 (1973); United States v. Haynes, 459 F.2d 106 (5th Cir. 1972); United States v. Casey, 428 F.2d 229 (5th Cir.,) cert. denied, 400 U.S. 839, 91 S.Ct. 78, 27 L.Ed.2d 73 (1970); United States v. Roberston, 417 F.2d 873 (5th Cir. 1969); Fitzpatrick v. United States, 410 F.2d 513 (5th Cir. 1969); Hale v. United States, 410 F.2d 147 (5th Cir.), cert. denied, 396 U.S. 902, 90 S.Ct. 216, 24 L.Ed.2d 179 (1969); Paige v. United States, 394 F.2d 105 (5th Cir. 1968); Roberson v. United States, 249 F.2d 737 (5th Cir.), cert. denied, 356 U.S. 919, 78 S.Ct. 704, 2 L.Ed.2d 715 (1958). See

. also United States v. Brazeal, 464 F.2d 1 (10th Cir. 1972); United States v. Mahanna, 461 F.2d 1110 (8th Cir. 1972); United States v. La Rose, 459 F.2d 361 (6th Cir. 1972); United States v. Peterson, 456 F.2d 1135 (10th Cir. 1972); United States v. Nitti, 444 F.2d 1056 (7th Cir. 1971); United States v. Johnson, 140 U.S.App.D.C. 54, 433 F.2d 1160 (1970); United States v. Turner, 421 F.2d 252 (10th Cir. 1970); Baker v. United States, 395 F.2d 368 (8th Cir. 1968); United States v. Minieri, 303 F.2d 550 (2d Cir.), cert. denied, 371 U.S. 847, 83 S.Ct. 79, 9 L.Ed.2d 81 (1962); Pearson v. United States, 192 F.2d 681 (6th Cir. 1951); United States v. O'Brien, 174 F.2d 341 (7th Cir. 1949). Whether the inference has been overcome by the explanation provided by the remaining evidence seems very much equivalent to these inquiries into the other requirements for invoking the inference. In fact, this Court actually has reversed convictions for insufficient evidence even in the face of such an inference. See, e. g., United States v. Mann, 557 F.2d 1211 (5th Cir. 1977); United States v. Bullock, 451 F.2d 884 (5th Cir. 1971); United States v. Gordon, 421 F.2d 1068 (5th Cir.), cert. denied, 398 U.S. 927, 90 S.Ct. 1816, 26 L.Ed.2d 89 (1970). See also United States v. Payne, 467 F.2d 828, 831 (5th Cir. 1972), cert. denied, 410 U.S. 912, 93 S.Ct. 975, 35 L.Ed.2d 275 (1973). Decisions by other courts recognize this scope of appellate review. See, e. g., United States v. Parent, 484 F.2d 726, 734 (7th Cir. 1973), cert. denied, 415 U.S. 923, 94 S.Ct. 1427, 39 L.Ed.2d 479 (1974); United States v. Jones, 418 F.2d 818 (8th Cir. 1969); Pendergrast v. United States, 135 U.S.App.D.C. 20, 416 F.2d 776, 789, cert. denied, 395 U.S. 926, 89 S.Ct. 1782, 23 L.Ed.2d 243 (1969); Rodgers v. United States, 402 F.2d 830 (9th Cir. 1968); United States v. Anost, 356 F.2d 413 (7th Cir. 1966); United States v. Lefkowitz, 284 F.2d 310 (2d Cir. 1960); Torres v. United States, 270 F.2d 252 (9th Cir. 1959), cert. denied, 362 U.S. 921, 80 S.Ct. 675, 4 L.Ed.2d 741 (1960); Cherry v. United States, 78 F.2d 334 (7th Cir. 1935); Wolf v. United States, 290 F. 738 (2d Cir. 1923); Degnan v. United States, 271 F. 291 (2d Cir. 1921). If an appellate court may determine the sufficiency of the evidence on appeal despite the Government's invocation of the inference, then it would seem appropriate for the trial court to apply the same standard to the same evidence.

Having wrestled with the problem, we leave its decision to another day and another case. Here the Government could rely on much more than the bare inference to defeat the motions for judgments of acquittal.

Clearly, the inference of guilty knowledge was triggered by these facts. The automobiles made the basis of the indictment were stolen in New York and within a few days were within the Appellees' possession in Huntsville. Within the first two weeks in May, Appellees had in their possession four stolen 1976 Cadillac automobiles.

In addition to the permissible inference these facts raise, the Government points to additional evidence here which has been deemed significant by this Court in determining guilty knowledge in past decisions. *See, e. g., United States v. Mann,* 557 F.2d 1211, 1217 (5th Cir. 1977); *United States v. Fairchild,* 505 F.2d 1378, 1381 (5th Cir. 1975); *United States v. Johnson,* 489 F.2d 139, 141–42 (5th Cir. 1974).

The disparity between the price Appellees paid for the four automobiles and their retail values was $3300, $2775, $3300 and $3650 respectively.[8] Even smaller variances between the price paid and value of a vehicle have been considered by this Court to be persuasive evidence for a jury's consideration on the question of guilty knowledge. Though Lang delivered the four automobiles to Appellees, no documents evidencing Lang's ownership were ever created. In order to register the first Cadillac, the only automobile Appellees sold, they caused the Alabama title to reflect the vendor to be "Michael Arzomian," though Green later executed a bill of sale reflecting that she was the vendor. Such fictional transactions tend to support a jury's conclusion of guilty knowledge. The second automobile bore a forged PVIN (public vehicle identification number), as did the other three Cadillacs, but the PVIN forged on the second car could only fit a different model. Anyone knowledgeable with the symbols in the PVIN would have known it was altered and could likely conclude the vehicle was stolen and there was some evidence that Burns was once in the retail automobile sales business. Appellees made no attempt to sell automobile number two.

Other evidence the Government submitted is also supportive of the jury's verdict. Green told the purchaser of the first automobile that she purchased it in New York from the individual named in the documents of title and drove it to Huntsville. She later repeated this same false explanation to other prospective purchasers. Automobiles number one and four carried identical markings around the door locks which indicated forcible entry. The marks on automobile number four were pointed out to Green. Subsequent to the FBI's interview of Burns, but prior to the FBI's first interview with Lang, Burns met with Lang and went over recollections of the four transactions. Burns never requested any restitution from Lang for the $25,000 Burns paid Lang. When interviewed and at trial, Lang's version was consistent with Burns'.

Appellees made out a very credible defense, centered on the question of guilty knowledge. Their defense was that they were not aware of the stolen character of the four automobiles. Burns testified that, other than what Lang told him, he had no knowledge of the true status of the vehicles and Green's knowledge came from her father. Lang told Burns that the four vehicles were repossessions from the North. Green had no knowledge of automobile values and Burns formulated his value estimates on industry wholesale price lists. There was only a few hundred dollars difference between the wholesale price and the price Burns paid Lang after making a downward adjustment for their Northern origin. Experts testified that vehicles known to have been stolen usually sell for much lower a percentage of their value. Our own cases describe telling disparities as unreasonably low or well below market and wholesale prices. The testimony and evidence showed that the forged papers and altered PVIN's were expertly done and would require an expert's efforts at detection. Burns openly displayed the automobiles at his own residence and advertised them in the newspapers. Green explained that she invented the story about buying

8. *See note* 1, *supra.*

the automobile in New York and driving it to Huntsville in order to justify her sales claims that the Cadillac was economical in terms of gas mileage, oil consumption and the like. Although Burns did accept automobiles number three and four without examination, he explained that he did so because his prior two experiences had been good. Burns checked the PVIN on the first automobile with the police, and the altered number was not listed as stolen. Burns explained that it would have been futile to demand restitution from Lang who was only a middleman. Finally, Burns and Green fully cooperated with officials during the investigation. The defense points to all this evidence to support the District Court's judgments of acquittal.

We must admit that Appellees put on an able defense. Their defense raised serious questions. We must conclude, however, that these questions were typical jury questions, put at rest by the guilty verdicts. We hold that the permissible inference along with the remaining evidence satisfied the various formulations of the sufficiency of the evidence standard. The District Court's judgments of acquittal are vacated with instructions to reinstate the jury's verdicts of guilty.

VACATED and REMANDED.