**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Gary Anthony GIANNI, Joseph Mike Giardina, Richard Loren Holland, James Robert Ham, Defendants-Appellants.**

No. 81–5237.

United States Court of Appeals, Eleventh Circuit.

June 14, 1982.

---

William B. Barnett, Orlando, Fla., for Gianni.

John S. Berk, Fort Lauderdale, Fla., for Giardina.

Jeffrey M. Harris, Fort Lauderdale, Fla., for Holland and Ham.

Joseph T. Urbaniak, Jr., Asst. U. S. Atty., Orlando, Fla., for plaintiff-appellee.

Before WISDOM \*, RONEY and HATCHETT, Circuit Judges.

RONEY, Circuit Judge:

Convicted of conspiracy to possess marijuana with intent to distribute in violation of 21 U.S.C.A. § 841(a)(1), defendants claim on appeal (1) the evidence was insufficient to convict, (2) the indictment should have been dismissed because of the Government's outrageous conduct and (3) evidence obtained during warrantless searches of four cars should have been suppressed. Rejecting these arguments, we affirm.

Late in the summer of 1980, the Drug Enforcement Administration instituted an undercover operation called "Operation Doublecross." Approved by the Department of Justice, Operation Doublecross was aimed at apprehending persons involved in financing marijuana purchases. It involved arranging the undercover sale of marijuana previously seized by the DEA in earlier operations. The four defendants were not principals involved in any sale, but were drivers of cars which contained some of this marijuana that had been "sold".

A brief review of the background facts is necessary to show the part played by the defendants. Pursuant to the guidelines of Operation Doublecross, DEA Agent Fagan contacted Kenneth Craig. Agent Fagan had met Craig roughly a year earlier in the course of an undercover DEA operation during which Craig had represented that he and Robert Karley, whom Agent Fagan had also met in the earlier operation, could supply cocaine or large amounts of marijuana. Craig had previously been present when a sample of marijuana was shown Agent Fagan.

In renewing his contacts with Craig and Karley, Agent Fagan informed them separately by telephone that he had a large quantity of marijuana available for sale. Agent Fagan told Karley to telephone if he knew anyone interested in the marijuana. Karley called Agent Fagan several days later, indicating he had some people, including "Craig's man", interested in the marijuana. A meeting was arranged, and negotiating sessions involving several other persons not defendants in this case followed. During the course of one session, the undercover DEA agents met David Wainer. Wainer indicated he had buyers then present at the site of the negotiations, a Holiday Inn Motel, ready to deal in large quantities of marijuana. Indicating his desire to protect his buyers, some of whom he said he had worked with for four or five years, Wainer told agents there would be no necessity for them to meet the buyers and that they would be kept from sight. Eventually, an agreement was reached for the sale and transfer of marijuana to Karley, Craig, Wainer and their "people". Undercover agents placed 390 pounds of marijuana in three cars provided by the buyers in return for $95,350.00. Later that same day a second transaction was arranged in which 760 pounds of marijuana was transferred to the buyers in the same fashion for approximately $186,200.00. Surveilling DEA agents observed both transactions.

The four defendants in this case were arrested while operating the cars loaded with marijuana in the second transaction. Each defendant was the sole occupant of the car he was driving at the time of his arrest.

### Sufficiency of the Evidence

Defendants contend there was insufficient evidence to support their convictions for conspiring to possess with the intent to distribute marijuana. Conceding the existence of a conspiracy between Karley, Craig and Wainer, defendants argue the evidence is insufficient to show any of them knew of the conspiracy and knowingly and willingly participated in it.

When confronted with a claim of insufficient evidence, we must view the evidence in the light most favorable to the

---

\* Honorable John Minor Wisdom, U. S. Circuit Judge for the Fifth Circuit, sitting by designation.

Government, *Glasser v. United States*, 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942); *United States v. Rice*, 652 F.2d 521, 526 (5th Cir. 1981),[1] making all credibility choices in support of the jury verdict. *United States v. Black*, 497 F.2d 1039 (5th Cir. 1974). The standard of review is whether a reasonably minded jury must necessarily entertain a reasonable doubt as to the defendants' guilt. *United States v. Rodriquez*, 654 F.2d 315, 317 (5th Cir. 1981); *United States v. Kelley*, 630 F.2d 302, 303 (5th Cir. 1980).

While mere presence or association with other persons involved in a criminal enterprise is not sufficient to prove participation in a conspiracy, *United States v. Horton*, 646 F.2d 181 (5th Cir. 1981), *cert. denied*, 454 U.S. 970, 102 S.Ct. 516, 70 L.Ed.2d 388, the essential elements of a conspiracy can be proven by inference from the actions of the actors or by circumstantial evidence. *United States v. Conway*, 632 F.2d 641, 643 (5th Cir. 1980); *United States v. Malatesta*, 590 F.2d 1379, 1381 (5th Cir.) *cert. denied*, 444 U.S. 846, 100 S.Ct. 91, 62 L.Ed.2d 59 (1979); *United States v. Alvarez*, 625 F.2d 1196, 1198 (5th Cir. 1980) (en banc), *cert. denied*, 451 U.S. 938, 101 S.Ct. 2017, 68 L.Ed.2d 324 (1981). There is rarely any direct evidence of an agreement to join a criminal conspiracy, so that a defendant's assent can be inferred from acts furthering the conspiracy's purpose. *United States v. Middlebrooks*, 618 F.2d 273, 278 (5th Cir.), *cert. denied*, 449 U.S. 984, 101 S.Ct. 401, 66 L.Ed.2d 246 (1980). The Government is not required to prove knowledge of all the details of the conspiracy on each of its members, provided a defendant's knowledge of the essentials of the conspiracy is established. *United States v. Alvarez*, 625 F.2d at 1198.

Carefully reviewing the evidence under *Glasser* and in light of these principles, we hold the evidence was sufficient to sustain the convictions. Pursuant to the agreement and consistent with the pattern employed in a transaction occurring only hours earlier that same day, the Government agents delivered three cars with trunks filled with marijuana to the Holiday Inn parking lot. The cars had been provided by conspirator Wainer. Three of the defendants emerged simultaneously from the motel, met with Karley in the parking lot, entered the marijuana laden vehicles and drove to another point in the lot where they parked together and were joined by a fourth car driven by the fourth defendant. The evidence amply shows all four defendants engaged in shuffling some marijuana bales to the fourth automobile, departed the lot, and were eventually arrested while operating the cars. Defendant Ham owned two of the cars, defendant Giardina one, and a fourth was owned by defendant Holland's wife. Evidence of these facts, along with conspirator Wainer's alluding to the presence of his "buyers" at the motel, eliminates the possibility that a jury necessarily must have entertained reasonable doubt of defendants' guilt. The defendants do not deny the existence of a drug conspiracy, and a jury could reasonably conclude from the evidence adduced at trial and the inferences reasonably drawn therefrom that they knew of the conspiracy and knowingly and willingly participated in it. The circumstances belie the argument that defendants did not know their cars contained marijuana.

### Motion to Dismiss

Arguing the DEA's supplying of the marijuana to the defendants was outrageous conduct constituting a denial of due process, defendants contend the district court erred in refusing to dismiss the indictment.

While both the Supreme Court and our precedents have recognized the possibility that conviction may be overturned where Government involvement in criminal schemes is so extensive that it may be characterized "outrageous", *United States v.*

---

1. The Eleventh Circuit, in the en banc decision of *Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981), adopted as precedent the decisions of the former Fifth Circuit decided prior to October 1, 1981.

*Russell*, 411 U.S. 423, 431–32, 93 S.Ct. 1637, 1642–43, 36 L.Ed.2d 366 (1973); *Hampton v. United States*, 425 U.S. 484, 96 S.Ct. 1646, 48 L.Ed.2d 113 (1976); *United States v. Gray*, 626 F.2d 494 (5th Cir. 1980), *cert. denied*, 450 U.S. 1091, 101 S.Ct. 887, 66 L.Ed.2d 820 (1981), to date it appears that neither the Supreme Court nor the Fifth or Eleventh Circuits has reversed a conviction on that basis. Nevertheless, in evaluating claims that official conduct rose to a constitutionally impermissible level, the cases turn on the totality of the circumstances with no single factor controlling. *United States v. Tobias*, 662 F.2d 381, 387 (5th Cir. 1981). Measured under this standard, Government involvement in criminal activity constitutes a due process violation only where it violates " 'fundamental fairness, shocking to the universal cause of justice,' " *United States v. Russell*, 411 U.S. at 432, 93 S.Ct. at 1643, quoting *Kinsella v. United States ex rel. Singleton*, 361 U.S. 234, 246, 80 S.Ct. 297, 303, 4 L.Ed.2d 268 (1960).

■ The Supreme Court has held Government infiltration of criminal activity a recognized and permissible means of investigation. *United States v. Russell*, 411 U.S. at 432, 93 S.Ct. at 1643. That in the course of investigating, Government agents supply or sell illegal drugs or provide other essential services does not necessarily constitute misconduct. *Hampton v. United States*, 425 U.S. at 489, 96 S.Ct. at 1649; *United States v. Gray*, 626 F.2d at 498.

■ The conduct of the Government here does not even approach that demonstrable level of outrageousness the case law suggests would be necessary for reversal of these defendants' convictions. The evidence reveals that DEA agents simply infiltrated an organization of persons known to be involved in illegal drug trafficking. Informed that large amounts of marijuana could be supplied and they should telephone if interested, Karley and Craig reinitiated contact with Government agents and, along with Wainer, vigorously pursued negotiations culminating in the transactions. All of the defendants were involved with these people without any Government instigation.

They never had any contact with Government agents. The availability of defendants and their automobiles to the conspirators to carry out the drug transactions was not the result of any government activity. Even if it could be argued that the Government activity with Karley, Craig and Wainer was somehow improper, the due process rights of these defendants were not violated.

In any event, under the totality of the circumstances and compared with other cases in which significantly greater police involvment has been held not violative of due process, *see United States v. Tobias*, 662 F.2d 381 (5th Cir. 1981), the Government's delivering and selling marijuana to willing, experienced buyers for large sums of cash does not constitute outrageous conduct warranting reversal of these criminal convictions.

### Suppression of Evidence

Defendants claim that because the warrantless searches of the automobiles they were driving did not come within any of the exceptions to the Fourth Amendment's search warrant requirement, the marijuana seized should have been suppressed.

It is clear from the record that after the DEA agents delivered the marijuana, surveilling agents observed the transfer of some bales from the three cars they had loaded to a fourth car, discovered later to be driven by defendant Ham. The agents had expected the marijuana would be driven away in three automobiles, and the intrusion of the fourth was a surprise and raised a concern that some marijuana might be misrouted and lost.

■ Given the observations of the surveilling agents and the unexpected intrusion of the fourth car, there existed both probable cause and exigent circumstances for the warrantless searches. *Chambers v. Maroney*, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970); *United States v. Gaultney*, 581 F.2d 1137 (5th Cir. 1978), *cert. denied*, 446 U.S. 907, 101 S.Ct. 1833, 64 L.Ed.2d 259 (1980).

AFFIRMED.