UNITED STATES of America,
Plaintiff–Appellant,

v.

Arthur J. GREER, Defendant–Appellee.

No. 86–3526.

United States Court of Appeals,
Eleventh Circuit.

Aug. 1, 1988.

Paul J. Moriarty, Asst. U.S. Atty., Tampa, Fla., Vicki L. Plaut, U.S. Dept. of Justice, Land & Natural Resources Div., Robert Klarquist, Washington, D.C., for plaintiff-appellant.

James M. Russ, Orlando, Fla., for defendant-appellee.

Before TJOFLAT and HATCHETT, Circuit Judges, and LYNNE [*], Senior District Judge.

TJOFLAT, Circuit Judge:

In this case, a jury returned verdicts of guilty against the defendant on seventeen counts. Citing insufficiency of the evidence, the trial judge entered judgments of acquittal with respect to two of those counts. The Government now appeals those judgments. We hold that we have jurisdiction to entertain the Government's appeal, and that the district court erred in entering the judgments of acquittal.

## I.

In December 1985, a federal grand jury returned a thirty-three-count indictment against Arthur J. Greer, charging him with violations of various federal laws in connection with his operation of a waste recycling and transportation business based in Orlando, Florida. This appeal concerns only two of the counts, counts sixteen and seventeen. Count sixteen charged Greer with having caused a dumping of hazardous waste in violation of 42 U.S.C. § 6928(d)(2)(A) (1982); [1] count seventeen charged Greer with having failed to report that dumping in violation of 42 U.S.C. § 9603(b)(3) (1982).[2]

Trial was before a jury. After he had put on his case, Greer moved the district court pursuant to Fed.R.Crim.P. 29(a) to enter judgments of acquittal on all counts. As permitted by Fed.R.Crim.P. 29(b), the court deferred ruling on the motion, reserving its decision pending return of the jury's verdicts.

Counsel made their closing arguments and the district court charged the jury. The jury returned verdicts of guilty on counts one through nine and twelve through nineteen. The district court thereafter ruled on Greer's Rule 29(a) motion and entered judgments of acquittal as to counts sixteen and seventeen. In the court's opinion, the Government's proof did not establish Greer's guilt beyond a reasonable doubt. The Government moved the court to reconsider its rulings, but the court denied the motion, stating that "[b]ased on the speculative evidence presented during trial, proof was not adduced beyond a reasonable doubt as to

---

[*] Honorable Seybourn H. Lynne, Senior U.S. District Judge for the Northern District of Alabama, sitting by designation.

[1]. Unless otherwise indicated, the statutory citations in this opinion refer the reader to the provisions in effect at the time of the offenses charged in the indictment. 42 U.S.C. § 6928(d)(2)(A) (1982) provides that

[a]ny person who—

. . . .

(2) knowingly treats, stores, or disposes of any hazardous waste identified or listed under this subchapter . . .
(A) without having obtained a permit under section 6925 of this title (or section 6926 of this title in the case of a State program) or pursuant to title I of the Marine Protection, Research, and Sanctuaries Act (86 Stat. 1052) [33 U.S.C. 1411 et seq.]

shall, upon conviction, be subject to a fine of not more than . . . $50,000 . . . for each day of violation, or to imprisonment not to exceed . . . two years . . . or both.

[2]. 42 U.S.C. § 9603(b)(3) (1982) provides that [a]ny person—

. . . .

(3) in charge of a facility from which a hazardous substance is released, other than a federally permitted release, in a quantity equal to or greater than that determined pursuant to section 9602 of this title who fails to notify immediately the appropriate agency of the United States Government as soon as he has knowledge of such release shall, upon conviction, be fined not more than $10,000 or imprisoned for not more than one year, or both.

counts 16 [and] 17." The Government now appeals.

## II.

We first address Greer's contention that we lack jurisdiction to entertain the Government's appeal. The Government urges that we have jurisdiction under 18 U.S.C. § 3731 (Supp. II 1984), which provides that

> [i]n a criminal case an appeal by the United States shall lie to a court of appeals from a decision, judgment, or order of a district court dismissing an indictment or information as to any one or more counts, except that no appeal shall lie where the double jeopardy clause of the United States Constitution prohibits further prosecution.

Greer's argument that we lack jurisdiction to hear the Government's appeal is twofold. First, he argues that section 3731, because it refers only to appeals from orders "dismissing an indictment," does not apply where, as here, the appeal is from a judgment of *acquittal.* Second, he argues that entertaining the Government's appeal would violate his rights under the double jeopardy clause of the United States Constitution.

While Greer's statutory argument may be attractive in the abstract, the Supreme Court has interpreted section 3731 as allowing government appeals in criminal cases "whenever the Constitution would permit." *United States v. Wilson,* 420 U.S. 332, 337, 95 S.Ct. 1013, 1019, 43 L.Ed.2d 232 (1975); *see also United States v. Martin Linen Supply Co.,* 430 U.S. 564, 567 n. 4, 97 S.Ct.

1349, 1352 n. 4, 51 L.Ed.2d 642 (1977).[3] Thus, Greer's jurisdictional attack must succeed or fail on the basis of his constitutional argument. *See United States v. Martinez,* 763 F.2d 1297, 1309 (11th Cir. 1985).

To be sure, the Supreme Court has never directly decided whether the double jeopardy clause bars appeal from the kind of acquittals involved in this case, that is, postverdict judgments of acquittal based on the insufficiency of the evidence. But this court has held on more than one occasion that such an appeal is not barred. *See United States v. Burns,* 597 F.2d 939, 940 (5th Cir.1979);[4] *see also United States v. Hayes Int'l Corp.,* 786 F.2d 1499, 1500 (11th Cir.1986); *United States v. Varkonyi,* 611 F.2d 84, 85 (5th Cir.), *cert. denied,* 446 U.S. 945, 100 S.Ct. 2173, 64 L.Ed.2d 801 (1980). Because the policy behind the double jeopardy clause is to prevent multiple prosecutions, *see Wilson,* 420 U.S. at 342–44, 95 S.Ct. at 1021–22, "the test for whether a government appeal of a judgment of acquittal is barred by the Double Jeopardy Clause is whether there will be any proceeding after a successful appeal that will require the resolution of further factual issues by the trier of fact." *Martinez,* 763 F.2d at 1309. Thus, in *Burns* we reasoned that an appeal from a postverdict judgment of acquittal based on the insufficiency of the evidence presents no double jeopardy problem because reversal would not result in further factfinding proceedings; the district court would simply reinstate the jury's guilty verdict and enter judgment upon that verdict.[5] *Burns,* 597 F.2d at 940–41.

---

3. The same statutory argument that Greer advances was ably presented by Justice Stevens in his concurring opinion in *Martin Linen Supply Co.* The majority in that case dismissed the argument as inconsistent with the Court's established interpretation of section 3731. *See Martin Linen Supply Co.,* 430 U.S. at 567 n. 4, 97 S.Ct. at 1352 n. 4.

4. In *Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir.1982), this court adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

5. In *Burns,* we relied on the reasoning similar to that used in *United States v. Wilson,* 420 U.S. 332, 95 S.Ct. 1013, 43 L.Ed.2d 232 (1975), where

the Supreme Court held that the government can appeal a postverdict judgment of acquittal ordered because of pretrial delay. The Court reasoned in *Wilson* that an appeal under that circumstance would not result in the defendant being twice placed in jeopardy because if the appellate court reversed the trial court, the jury's verdict could be reinstated without further factfinding proceedings. *Id.* at 352, 95 S.Ct. at 1026. Since *Wilson,* the Court has continued to emphasize that the evil against which the double jeopardy clause protects is postacquittal exposure of the defendant to further factfinding proceedings. *See, e.g., Smalis v. Pennsylvania,* 476 U.S. 140, 145 & n. 8, 106 S.Ct. 1745, 1749 & n. 8, 90 L.Ed.2d 116 (1986); *United States v.*

This precedent controls unless overruled by this court sitting en banc or unless invalidated by an intervening Supreme Court decision. Neither of these scenarios has come to pass, and we are consequently precluded from revisiting the issue here. We therefore turn to the merits of the Government's appeal.

### III.

We begin with the Government's appeal with respect to count sixteen of the indictment. As already noted, that count charged Greer with having caused a dumping of hazardous waste in violation of 42 U.S.C. § 6928(d)(2)(A) (1982).[6] Specifically, the indictment charged that "[o]n or about August 12, 1982, in the Middle District of Florida, Arthur J. Greer did knowingly dispose of or cause to be disposed of a hazardous waste, that is, a mixture of approximately 1,000 gallons of hazardous waste primarily containing 1, 1, 1 trichloroethane, ... [i]n violation of Title 42, United States Code, Section 6928(d)(2)(a)."

Where, as here, the jury returns a verdict of guilty and the district court sets aside that verdict by entering a judgment of acquittal based on the insufficiency of the evidence, the decision of the district court "is entitled to no deference." *United States v. Hayes Int'l Corp.*, 786 F.2d 1499, 1500 (11th Cir.1986). Our task is to decide "whether the evidence, examined in a light most favorable to the Government, was sufficient to support the jury's conclusion that the defendant was guilty beyond a reasonable doubt." *United States v. Varkonyi*, 611 F.2d 84, 85–86 (5th Cir.), *cert. denied*, 446 U.S. 945, 100 S.Ct. 2173, 64 L.Ed.2d 801 (1980). All credibility choices must be made in support of the jury's

verdict. *United States v. Gianni*, 678 F.2d 956, 958–59 (11th Cir.), *cert. denied*, 459 U.S. 1071, 103 S.Ct. 491, 74 L.Ed.2d 633 (1982); *United States v. Burns*, 597 F.2d 939, 941 (5th Cir.1979).

Because the district court did not indicate in what respect it found the evidence insufficient to support the jury's verdicts, we must examine the proof adduced with regard to each element of the crimes charged. The trial judge instructed the jurors that, in order for them to find Greer guilty of the crime charged in count sixteen, the Government would have to prove: [7]

(1) that Greer "knowingly disposed of or caused others to dispose of a chemical waste ... on or about August 12, 1982";

(2) that the material so disposed was "a chemical waste primarily containing 1,1,1–trichloroethane";

(3) that Greer "knew that the chemical waste had the potential to be harmful to others or to the environment, and, in other words, it was not an innocuous substance like water";

(4) that "1,1,1–trichloroethane was listed or identified by the United States [Environmental Protection Agency] as a hazardous waste pursuant to [42 U.S.C. § 9601(14) (1982) ]"; and

(5) that Greer "had not obtained a permit from [the Environmental Protection Agency] authorizing the disposal under [42 U.S.C. § 6925 (1982) ]."

As to the fourth and fifth elements, there can be no question that the evidence adduced at trial was sufficient to support the jury's conclusion that the Government carried its burden of proof. Accordingly,

*Martin Linen Supply Co.*, 430 U.S. 564, 97 S.Ct. 1349, 51 L.Ed.2d 642 (1977).

At oral argument, Greer's attorney suggested that the undertaking we perform as a reviewing court in an appeal such as this one is a species of "further factfinding" prohibited by the double jeopardy clause. We disagree. When we review the sufficiency of the evidence supporting a jury verdict of guilty, we do not *find* facts. Rather, we begin with the premise that the jury was able to find a certain set of facts—the facts necessary to support its verdict—and we then

test that premise against the evidence in the record. As the Supreme Court has observed, "courts can and regularly do gauge the sufficiency of the evidence without intruding into any legitimate domain of the trier of fact." *Jackson v. Virginia*, 443 U.S. 307, 321, 99 S.Ct. 2781, 2790, 61 L.Ed.2d 560 (1979).

6. *See supra* note 1.

7. Neither party has in this appeal challenged the trial court's instructions.

we will limit our discussion to the first three elements.

The Government's evidence established that Greer operated a waste recycling and transportation business in Orlando, Florida. In connection with that business, Greer stored and recycled wastes at a site located on Forsyth Road in Orlando. Several witnesses testified that Greer was actively involved in the daily operation of the business; he reported for work each day to an office building situated on the Forsyth Road site and he had regular contact with and monitored the activities of the employees who labored at that site.

At the time of the alleged dumping, Edward L. Fountain was employed by Greer as plant manager at the Forsyth Road site. Fountain testified at trial that one of his primary responsibilities as plant manager was to "keep the drum count down." He explained that Greer was forbidden under a local ordinance from storing more than 1300 drums of waste on the Forsyth Road site. To keep the drum count below 1300, Fountain would occasionally dump incoming wastes directly onto the ground; he testified that in doing so, he was continuing a practice in which previous plant managers had routinely engaged. According to Fountain, Greer approved of this practice, telling his employees "well, we got to keep this drum count down." Another former employee, Joyce Buchan, testified that she once overheard Greer tell employees that "a rainy day is a good day to get your drum count down." Still other former employees testified that they had on occasion dumped wastes at the Forsyth Road site. Fountain testified that he once questioned dumping what he thought was a particularly noxious load of waste, and Greer's reaction was to say "I never had any problem out of [former plant managers]. Do I see a problem out of you?"

On the afternoon of the date of the dumping incident charged in count sixteen, Edward Blasko, another employee of Greer's, drove a 1000–gallon truckload of waste, which he had picked up at a manufacturing plant earlier that day, onto the Forsyth Road site. Fountain testified on direct examination that

> [Greer] came to me and says we are going to need the truck tomorrow to pick up another load or something to this effect. And I said what am I going to do with the material that's in it. And he says do I see a problem again. And I said no, not that I know of.
>
> Now this is the best of my recollection as far as this conversation. And at that time I knew exactly what to do, I had been doing it all that time anyway, so it just became second nature.

Fountain's testimony on cross-examination made it clear that he had informed Greer that it would be impossible to store the waste anywhere on the site:

> A. [Greer] told me that we needed the truck, I believe it was the next day we needed that truck, and needed it to be empty. I had no tanks in which to put the material and I had no drums in which to pump the material into. And I asked him what am I to do with it. And at that time, to my best recollection, he says this is a job that I hired you for, something to this effect, you handle it.
>
> Q. You handle it?
>
> A. I handle it.
>
> Q. Well, did you tell him that there was no room in the vertical [storage] tanks [on the Forsyth Road site]?
>
> A. I sure did. I sure did.
>
> Q. You did?
>
> A. I sure did.
>
> Q. Did you tell him there were no drums?
>
> A. Exactly.

Fountain testified that immediately after his conversation with Greer, he pumped the truck's contents directly onto the ground.

■ We conclude that this evidence, viewed in a light most favorable to the Government, was sufficient to support the jury's conclusion that the Government carried its burden of proof with respect to the first element of the crime charged in count sixteen. It is true that the evidence did not show that Greer directly told Fountain to dump the load that was brought onto the site on August 12, 1982. However, given

Fountain's testimony that Greer had approved of previous dumpings as a way to meet storage squeezes, the jury could infer from the context of the specific discussion described by Fountain that when Greer instructed him to "handle" the truckload of waste on August 12, 1982, he effectively ordered him to dump it. Using that inference, the jury could find that the Government had proven that Greer "knowingly disposed of or caused others to dispose of a chemical waste ... on or about August 12, 1982." [8] *Cf. Hayes Int'l*, 786 F.2d at 1506.

In connection with the second element—that the material dumped on August 12, 1982 was "a chemical waste primarily containing 1,1,1-trichloroethane"—the Government introduced into evidence the bill of lading for the load allegedly dumped. On the bill of lading was a typewritten notation, "800 gallons 1,1,1 trichloroethane for disposal"; next to this typewritten notation was a handwritten notation, "1000 gallons." Fountain testified that he smelled the material before dumping it, and that it smelled like 1,1,1 trichloroethane. Additionally, an expert witness for the Government testified that traces of 1,1,1 trichloroethane had been found by government inspectors in August 1983 at the site of the alleged dumping.

In light of this evidence, a rational trier of fact could have found beyond a reasonable doubt that the material dumped was 1,1,1 trichloroethane. It is true that conflicting evidence was presented on the point—the manifest [9] for the load of material in question read "waste solvent, n.o.s. [not otherwise specified]." Additionally, a government inspection of the site was conducted on the day immediately following the alleged dumping, and the inspector—who took no soil samples at that time—noted no unusually strong odor; [10] one witness for the defense testified that had 1000 gallons of 1,1,1 trichloroethane in fact been dumped on August 12, 1982, the odor would have lingered for several days. Although this evidence might support a conclusion contrary to the one the jury reached, our task is not to choose among competing constructions of the evidence. *See Martinez*, 763 F.2d at 1302. "A jury is free to choose among reasonable constructions of the evidence." *Id.* Here, the evidence is sufficient to support the jury's conclusion that the material dumped on August 12, 1982 was 1,1,1 trichloroethane.

Finally, we turn to the third element of the crime charged in count sixteen—that Greer "knew that the chemical waste had the potential to be harmful to others or to the environment." As noted above, the Government introduced a bill of lading which identified the load as 1,1,1 trichloroethane. Greer himself testified that he knew that the law prohibited the dumping of such material. The jury could infer from this evidence that Greer knew that dumping the load would pose harm to others or the environment.

We conclude that there is sufficient evidence to support the jury's determination that Greer was guilty beyond a reasonable doubt of the crime charged in count sixteen. Having reached that conclusion, we readily reach the same conclusion as to the crime charged in count seventeen. That count charged Greer with having failed to report the dumping in violation of 42 U.S.C. § 9603(b)(3) (1982).[11] Specifically, the indictment charged that "[o]n or about Au-

---

**8.** It does not avail Greer to argue that Fountain's character was seriously impeached on cross-examination. The issue of credibility is one for the jury to decide; in an appeal such as this, we must decide all questions of credibility in favor of the Government. *See United States v. Gianni*, 678 F.2d 956, 958–59 (11th Cir.), *cert. denied*, 459 U.S. 1071, 103 S.Ct. 491, 74 L.Ed.2d 633 (1982).

**9.** The Resource Conservation and Recovery Act, 42 U.S.C. §§ 6901–6987 mandates the "use of a manifest system ... to assure that all [hazardous waste regulated by the Act] is designated for treatment, storage, or disposal in, and arrives at, treatment, storage, or disposal facilities ... for which a permit has been issued." *Id.* § 6922(5) (1982). Consistent with this requirement, Greer used a manifest system in connection with his waste transportation operations.

**10.** The inspector did testify, however, that she observed a "sheen" on the ground where the dumping allegedly occurred.

**11.** *See supra* note 2.

gust 12, 1982, in the Middle District of Florida, a quantity in excess of one pound of hazardous substance, that is, a mixture of approximately 1,000 gallons of hazardous waste primarily containing 1,1,1 trichloroethane, ... was released into the environment without a federal permit from the Forsyth Road site" and that "Arthur J. Greer, being the person in charge of the Forsyth Road site, ... and having knowledge of the aforementioned release of a hazardous substance into the environment without a permit, failed to notify the appropriate agency of the United States Government ... [i]n violation of Title 42, United States Code, Section 9603(b)(3)." The trial court instructed the jury that the Government had to prove the following elements with respect to count seventeen: [12]

(1) that Greer "was, in fact, in charge of the facility at which the release occurred";

(2) that "one pound or more of 1,1,1-trichloroethane was released from the facility"; [13]

(3) that Greer "knew of such release"; and

(4) that Greer, "after learning of the release[,] ... failed to immediately notify the National Response Center of the United States Coast Guard."

 As to the first element, the defense stipulated that Greer owned and operated the Forsyth Road site at the time of the alleged dumping; in addition, several witnesses who were former employees at the Forsyth Road site testified that Greer was actively involved in the daily operation of the business. The second and third elements were established by the same evidence that established the first three elements of the crime charged in count sixteen. Finally, as to the fourth element, the Government introduced, without objection, an affidavit by the Coast Guard stating that Greer had made no report of a dumping to the National Response Center. We hold that the evidence is sufficient to support the jury's finding of guilt with respect to each element of the crime charged in count seventeen.

### IV.

In summary, we reverse the district court's judgments of acquittal on counts sixteen and seventeen. We remand the case with instructions that the district court enter judgments in accordance with the jury's verdicts of guilty.

REVERSED and REMANDED.

---

12. *See supra* note 7.

13. 42 U.S.C. § 9602(b) (1982) provides that until such time as the administrator of the Environmental Protection Agency shall promulgate regulations governing reportable quantities, a quantity of one pound qualifies as a reportable quantity. At the time of the dumping alleged in counts sixteen and seventeen, the administrator had promulgated no regulations governing reportable quantities.