**UNITED STATES of America, Plaintiff,**

v.

**Timothy A. DOEPEL, John P. Whiteside, John R. Grobmyer, III, John L. Witherspoon, Charles B. Whiteside, James F. Lyon, Jr., Maurice Eason and Frank M. Grobmyer, Defendants.**

No. LR–CR–90–148 (1–8).

United States District Court, E.D. Arkansas, W.D.

Jan. 9, 1991.

**250**

Charles Banks, U.S. Atty. by Terry L. Derden, Asst. U.S. Atty., Little Rock, Ark., for plaintiff.

William R. Wilson, Little Rock, Ark., for defendants.

## MEMORANDUM OPINION AND ORDER

GEORGE HOWARD, Jr., District Judge.

This action was appealed to this Court from a ruling of the Magistrate Judge finding each defendant guilty of aiding and abetting, pursuant to Title 18 U.S.C. § 2, in exceeding the daily bag limit and wanton waste of migratory fowls.[1] Defendants contend vigorously that the evidence is insufficient to sustain the convictions.[2]

In reviewing the case, the Court must view the evidence as well as all reasonable inferences flowing therefrom in a light most favorable to the Government. In addition, this Court must accept the credibili-

ty findings as determined by the Magistrate Judge. *Glasser v. United States*, 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942); *United States v. Gianni*, 678 F.2d 956, 958 (11th Cir.1982). In essence, the central question is whether the evidence is sufficient to sustain the conviction of each defendant-appellant of aiding and abetting the commission of an offense against the United States. For reasons hereinafter discussed, the Court sustains the conviction of James Frank Lyon, Jr. and Maurice L. Eason, but reverses the convictions of Timothy A. Doepel, John P. Whiteside, John R. Grobmyer, John H. Witherspoon, Charles P. Whiteside and Frank M. Grobmyer.

## REVIEW OF PROCEEDING BELOW

Following the Government's case in chief on March 19, 1990, defendants moved for judgment of acquittal and further advised the Magistrate Judge that defendants would not offer any evidence. The Magistrate Judge made the following factual finding:

"I find that the circumstantial evidence does show, if Mr. Derden {Assistant U.S. Attorney} is correct about the state of the law with regard to aiding and abetting, that the defendants exceeded the daily bag limit of water fowl and engaged in wanton waste of migratory water fowl. The circumstantial evidence places them at the scene although the testimony of Agent Wood and of Agent Parker would meet the requirements where I could find beyond a reasonable doubt that these two violations have occurred."

On April 10, 1990, after considering briefs filed by counsel, the Magistrate Judge ruled:

The circumstantial evidence convinces me beyond a reasonable doubt of the defendants' guilt. In addition to the fac-

---

1. 50 C.F.R. § 20.24 provides:
    No person shall take in any one calendar day, more than the daily bag limit or aggregate daily bag limit, whichever applies.
    50 C.F.R. § 20.25 specifies:
    No person shall kill or cripple any migratory game bird ... without making a reasonable

*effort to retrieve the bird, and, retain it in his actual custody....*

2. Each defendant was acquitted of the charge "possession of migratory water fowl taken in violation of 50 C.F.R. § 20.24".

tual findings entered on March 19, 1990, there are other facts that support the Court's conclusion that the defendants are guilty beyond a reasonable doubt. Each presented a legal limit of ducks indicating that each had been shooting. Mr. Eason's statement is evidence of his involvement and, at the least, other defendants aided and abetted him. Also, the defendants could see the ducks "over the limit" left in the area.

To be convicted of aiding and abetting, one need only in some way associate with the venture, participate in it as something he wished to bring about and sought by his actions to make it succeed. *United States v. Good Shield*, 544 F.2d 950 (8th Cir.1976). The circumstantial evidence as outlined on the record and in this memorandum demonstrates the guilt beyond a reasonable doubt of each defendant.[3]

## FACTUAL BACKGROUND

On December 17, 1989, during the early morning hours, Agents Kevin Wood and Ron Parker of the United States Fish and Wild Life Service, Law Enforcement Division, went to the Frank Lyon's farm, after hearing a "large volley of shots", and decided to investigate the shooting activity in connection with their duties in enforcing the Migratory Bird Treaty Act. As Agent Wood approached the hunting area, he heard duck calls and observed two vehicles parked on a levee adjacent to the hunting area and also heard a boat motor start up. Later, Agent Wood discovered eight hunters, Timothy Doepel, John P. Whiteside, John R. Grobmyer, III, John L. Witherspoon, Charles B. Whiteside, James F. Lyon, Jr., Maurice L. Eason and Frank M. Grobmyer as they left the boat and approached their vehicles. Agent Wood immediately identified himself to defendants and asked to see their licenses, duck stamps, shotguns and shells. After inspecting these items, Agent Wood concluded that all were in order and proper form. Agent Wood also found that each defendant possessed the legal limit of ducks.[4] Agent Wood requested and received permission from defendant James F. Lyon, Jr., owner of the boat and hunting area, to use Mr. Lyon's boat in order to investigate the hunting area. Defendant, Maurice L. Eason, who was serving as hunting guide, was authorized to operate the boat and take Agent Wood to the hunting area. It was agreed that the hunters and agents would meet later at a clubhouse located on the farm approximately one mile north of the hunting area.

In returning to the hunting area, Eason followed the trail through the frozen ice that the boat had made earlier. It was apparent that no other boat had been in the area because ice on both sides of the trail was frozen solid. As the boat navigated through the trail, Agent Wood observed a dead hen mallard and a wood duck which he retrieved. When the boat entered the hunting area, Agent Wood saw the blind and decoys used by defendants earlier and also discovered and retrieved a total of sixteen ducks. One of these ducks was still alive and the others were limber and appeared to have been "freshly killed". In

---

**3.** During sentencing, the Magistrate Judge suspended imposition of sentence and placed each defendant on probation for a period of three years on each count and the counts are to run concurrently with the following conditions: (a) each defendant was ordered to pay a fine in the sum of $2,500.00; (b) each defendant was directed not to engage in any hunting activity during the first year of probation; and (c) each defendant was directed to comply with all local, state and federal laws as well as all rules and regulations of the probation office.

**4.** The lawful limit on that day was not more than two mallards of which not more than one could be a hen and the privilege to kill one other duck of a different species. Each defendant had a total of three ducks.

While inspecting the ducks initially, Agent Wood observed that one of the hunters had two hen mallards and "another duck", and one of the other hunters had "two drake mallards and another duck." The two hen mallards would have placed that hunter who possessed them over the limit; however, Eason advised the agent that he had tied the ducks together and made an error. Agent Wood permitted the two hunters to "swap one hen mallard for one drake mallard [in order] to make each hunter's" possession a lawful limit. Agent Wood also testified that he regarded this circumstance as "a minor problem."

response to Agent Wood's inquiry "how it could happen that they killed that many ducks," Eason, Wood testified, said "that they had started shooting at legal shooting hours, that it was still dark and that he had no idea that there were that many ducks on the water." Eason also advised Agent Wood that he, Eason, was aware of the presence of the two ducks first retrieved and that "he intended to come back and pick these ducks up later." After inspecting the blind, Agent Wood found that there was only one blind in the area and that it was large enough to accommodate the eight defendants as a group. Agent Wood also testified that it was his opinion that the blind was so structured that each occupant of the blind could readily observe the ducks in the water and on the ice that he retrieved from the hunting area.

Agent Wood also testified that as the boat moved through the hunting area, Eason, who was at the rear end of the boat, had thrown a duck back into the water that had been retrieved by Agent Wood. As a consequence, Agent Wood removed all of the retrieved ducks from the rear end of the boat to the front of the boat.

Observing no other fowls in the area, Agent Wood and Eason immediately departed for the clubhouse.

Upon arriving at the clubhouse, the Miranda warnings were given all defendants; and only Eason made a statement to the effect that he had no idea that there were that many ducks in the hunting area and that he felt responsible for the violation. Agent Wood testified that Mr. Lyon appeared to be very nervous and that he observed Mr. Lyon's hands trembling at the time.

It was stipulated between counsel for the Government and defendants that if Agent Parker were called to testify, his testimony would, in essence, corroborate the testimony of Agent Wood relative to the volley of shots heard, the number and condition of the ducks retrieved from the hunting area; and that there was only one unfrozen boat trail in the area. As a consequence, the Government rested its case.

## DISCUSSION

In advance of examining the relevant evidence relied upon by the Government in support of its position that the evidence is sufficient to sustain the conviction of each defendant beyond a reasonable doubt, the Court takes this opportunity to discuss applicable case law pertaining to the issues to be resolved.

In *United States v. Kelton*, 446 F.2d 669, 671 (8th Cir.1971), Chief Judge Donald Lay, in speaking for the Court, reviewed the essential elements of establishing a case of aiding and abetting, stating:

"The crime of aiding and abetting is one requiring 'specific intent' or as Judge L. Hand once described it 'purposive attitude.' ... Mere association, as opposed to participation, is not sufficient to establish guilt.... Nor is mere presence at the scene of a crime alone sufficient to sustain the burden of proof the government bears.... Presence must be accompanied by a culpable purpose before it can be equated with aiding and abetting....

'Presence is ... equated to aiding and abetting when it is shown that it designedly encourages the perpetrator, facilitates the unlawful deed—as when the accused acts as a lookout—or where it simulates others to render assistance to the criminal act. But presence without these or similar attributes is insufficient to identify the accused as a party to the criminality'."

Judge Lay further observed:

"The necessity for proving facts other than presence has been explained as 'an essential safeguard against the ever present danger of *assuming the complicity* of all in attendance whenever group activity is involved.... The courts have the responsibility to make sure that mere speculation is not permitted to substitute for proof in such cases'."

In *United States v. Lard*, 734 F.2d 1290, 1298 (8th Cir.1984), the Court of Appeals stated:

". . . the aider and abettor must 'in some sort associate himself with the {illegal activity}; that he participated in it as something he wishes to bring about, that he seek by his action to make it succeed'. . . . Mere presence at the scene of the crime or mere association with one engaged in a crime does not make him an aider and abettor."

In *United States v. Hill*, 464 F.2d 1287 (8th Cir.1972), the Court of Appeals said:

As the term 'aiding and abetting' implies, it assumes some participation in the criminal act in furtherance of the common design, either before or at the time the criminal act is committed. It implies some conduct of an affirmative nature and *mere negative acquiescence is not sufficient*. (Emphasis added)

It is clear that the elements of aiding and abetting may be established by circumstantial evidence, however, the Court of Appeals has also made it abundantly clear that the fact finder may not indulge in speculation and conjecture as a "substitute for proof in such cases." *United States v. Kelton, supra.*

After carefully reviewing the evidence contained in this record, this Court is of the view that the Government's evidence falls far short of establishing the guilt of Timothy Doepel, John Whiteside, John Grobmyer, III, John L. Witherspoon, Charles B. Whiteside and Frank M. Grobmyer, beyond a reasonable doubt of aiding and abetting in exceeding the daily bag limit and wanton waste of migratory fowls. The substance of the Government's case against these defendants is predicated on inferences drawn from circumstantial evidence reached by engaging in mere speculation and conjecture.

The sum and substance of the Government's evidence discloses that the defendants were engaged in a group activity; they occupied the same hunting blind; each defendant possessed a rifle; there were a series of volley shots; there were a series of duck calls; there were decoys in the hunting area; defendants were dressed in camouflaged hunting outfits; all defendants possessed the legal limit of ducks when approached by the agents; the group used the same boat to enter and exit the hunting area. Agent Wood discovered eighteen ducks in or adjacent to the hunting area and one of them was still alive. But these circumstances, without indulging in rank speculation and conjecture, do not lead to the logical conclusion or inference that each and every defendant aided and abetted in the illegal conduct resulting in the wanton waste and excess over the limit of migratory fowls. It is conceded by the Government that the agents did not personally witness any of the defendants shooting a duck. Only defendant Eason made statements when questioned by the agents to the effect that he did not realize that there were that many ducks left in the area and that he planned to return later and get two ducks retrieved from the water. This Court is not persuaded that these statements are sufficient to establish a "culpable purpose" on the part of each and every defendant in this action. Moreover, while these statements are the closest thing to an admission, but other than Eason, these statements do not identify anyone in particular, nor are they sufficient to include all eight defendants.

In concluding that the Government presented sufficient evidence to sustain the charges against these defendants beyond a reasonable doubt, the Magistrate Judge relied on the case of *United States v. Good Shield, supra.* But a careful reading of *Good Shield* reveals that the factual matters in *Good Shield* are different from those in the instant case.

In *Good Shield*, defendants, Joe Good Shield and Paul Good Shield, brothers, were charged and convicted of assaulting one Jewell McCaig with a dangerous weapon. Joe claimed that the evidence against him was insufficient because he did not stab or strike Jewell. The evidence disclosed, however, that both Joe and Paul broke down the door to Jewell's home in the early morning hours and entered her bedroom. Jewell also testified that Joe placed a hanger around her neck and made threatening remarks; Jewell was forced to

leave her home with both Joe and Paul. When Jewell made an attempt to run away, Paul stabbed her in the left arm. Paul and Joe then drove to a residence of a relative where both Joe and Paul ordered Jewell to give a written statement implicating herself as the responsible party for the murder of an individual that Joe's and Paul's brother had been convicted of and was serving time in the penitentiary. The Court of Appeals held that aiders and abettors and those causing an act to be done are punishable as principals. It is readily apparent that Joe was associated in the venture and affirmatively took an active role in order to make the venture succeed.

In this case, there is no evidence demonstrating any affirmative acts, encouragement or assistance in the substantive offense on the part of Doepel, the Whitesides, the Grobmyers and Witherspoon. Mere presence or negative acquiescence is insufficient without more.

### DEFENDANTS MAURICE L. EASON AND JAMES F. LYON, JR.

■ The Court is convinced that the evidence is sufficient to sustain the burden the Government bears to establish the charges of aiding and abetting against defendants Maurice L. Eason and James F. Lyon, Jr. beyond a reasonable doubt.

The evidence not only discloses that Eason sought to frustrate Agent Wood's efforts to retrieve the excess fowls from the lake by throwing at least one duck back into the lake, but Eason readily admitted that he had planned to return to the hunting area, later in the day, and take possession of at least two of the ducks found floating in the water. Eason further stated to Agent Wood that he did not realize that the ducks retrieved were that numerous. Moreover, Eason offered to accept full responsibility for the illegal activity.

■ Relative to defendant Lyon, the Court notes, but does not regard this as

controlling, that Agent Wood testified that Lyon was "very nervous" and that Lyon was "trembling" during the questioning of the defendants at the clubhouse. More importantly, if not dispositive in establishing Lyon's guilt beyond a reasonable doubt, the evidence establishes that Lyon owned the land on which the hunting area was located, as well as the boat, the duck decoys and the blind used by all defendants. As owner of the instrumentalities used to violate and frustrate the overall purpose of the Congress of the United States in enacting the Migratory Bird Treaty Act [5], Lyon had a duty, at least moral if not in fact legal, to prevent illegal activity from being conducted on his premises. Lyon may not shield himself from this obligation by asserting the concept of "negative acquiescence." He had an affirmative duty to intervene and preclude any and all illegal activity. In this Court's judgment, Lyon's failure to prevent or protest the illegal activity is but a tacit form of encouragement or endorsement of the illegal activity. In other words, Lyon's omission of this obligation, as property owner, to prohibit or disallow the illegal conduct resulting in the excess daily bag limit and the wanton waste of migratory water fowl establishes his guilt of aiding and abetting beyond a reasonable doubt.

Accordingly, the judgment is affirmed as to Maurice L. Eason and James F. Lyon, Jr., but reversed with order to dismiss as to Timothy A. Doepel, John P. Whiteside, John R. Grobmyer, III, John L. Witherspoon, Charles B. Whiteside and Frank M. Grobmyer.

IT IS SO ORDERED.

---

**5.** The Congressional object and purpose in enacting the Migratory Bird Treaty Act is "to aid in the restoration of [migratory birds] in those parts of the United States adapted thereto where the same have become scarce or extinct, and also to regulate the introduction of American or foreign birds ... in localities where they have not heretofore existed." See: Title 16 U.S.C. § 701.