[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 11-15512
Non-Argument Calendar
_____

D.C. Docket Nos. 4:10-cv-00028-WTM-GRS; 4:08-cr-00088-WTM-GRS-1


RICARDO DIAZ,

Petitioner - Appellant,

versus

UNITED STATES OF AMERICA,

Respondent - Appellee.

_____

Appeal from the United States District Court
for the Southern District of Georgia
_____

(February 8, 2013)

Before BARKETT, MARTIN and KRAVITCH, Circuit Judges.

PER CURIAM:

Ricardo Diaz appeals *pro se* the district court's denial, without an evidentiary hearing, of his 28 U.S.C. § 2255 motion to vacate his 100-month sentence imposed after he pleaded guilty to conspiracy to possess heroin with intent to distribute. We granted a certificate of appealability on the following issue: "Whether the district court erred when it denied, without an evidentiary hearing, Diaz's claim that his counsel rendered ineffective assistance by failing to investigate and discover that Diaz's codefendant had lied to the government and wanted to exculpate Diaz, thereby rendering Diaz's guilty plea not knowing and voluntary?" After careful review, we affirm.

## I.

In November 2007, federal customs agents found three kilograms of heroin in Sergey Mazur's cabin on a ship docked in Savannah, Georgia. Mazur agreed to cooperate with authorities by making a controlled delivery of the heroin to Osvaldo Badosa, Diaz's cousin. Drug Enforcement Administration (DEA) agents arrested Badosa when the delivery took place on December 1, 2007. At the scene of the arrest, the agents found $4,000 in cash and two rental car receipts signed by Diaz in Badosa's car. And during Badosa's arrest, Diaz called him.

Badosa told the DEA agents that Diaz had arranged Badosa's trip to Savannah to acquire the heroin. According to Badosa, Diaz would receive the

2

heroin from Badosa and pass it on to Gilmer Valasquez.[1]  On the day of the controlled delivery, Valasquez called Diaz.  The DEA agents prompted Badosa to make a recorded phone call to Diaz.  During that call, Diaz asked Badosa if he was "straight," and Badosa replied that "[i]t went off like it was supposed to go — all three," which presumably referred to the three kilograms of heroin involved in the delivery.  In May 2008, a grand jury indicted Diaz for one count of conspiracy to import one kilogram or more of heroin, in violation of 21 U.S.C. § 963, and one count of conspiracy to distribute and to possess with intent to distribute one kilogram or more of heroin, in violation of 21 U.S.C. § 846.  Diaz was then arrested.

DEA agents interviewed Diaz on August 5, 2008, and he admitted that both he and Badosa had been in contact with Valasquez before the controlled delivery. Diaz told the agents that Valasquez hired Badosa to pick up three kilograms of heroin on December 1, 2007, and that Valasquez had subsequently fled the country to avoid prosecution.

On August 18, 2008, Diaz signed a plea agreement, and on August 22, 2008, he pleaded guilty to conspiracy to possess heroin with intent to distribute.  If Diaz had been convicted after a trial, he faced a mandatory minimum of 10 years and mandatory life imprisonment if the government had filed for an enhanced penalty

---

[1] Although the record is inconsistent in its spelling of "Valasquez," we use "Valasquez" throughout this opinion for the sake of clarity.

under 21 U.S.C. § 851 because Diaz had two prior felony drug convictions. *See* 21 U.S.C. §§ 841(b)(1)(A)(i), 846, 960(b)(1)(A), 963. In the plea agreement, however, the government agreed to not file a sentence enhancement and Diaz was sentenced to 100 months' imprisonment.

Between his arrest and his guilty plea, Diaz alleges he learned that Badosa wanted to talk to Diaz's lawyer and testify that Diaz had not been involved in the conspiracy. Diaz claims that his lawyer refused to speak to Badosa and continued to advise Diaz to plead guilty. After he pleaded guilty, but before sentencing, Diaz alleges his lawyer received an unsigned affidavit bearing Badosa's name, which said Badosa had misled the authorities, Diaz was not involved in the conspiracy, and Badosa would not testify against Diaz. Diaz asked his lawyer to seek a continuance of the sentencing hearing, but counsel refused and the sentencing went ahead as scheduled.

Diaz subsequently filed a 28 U.S.C. § 2255 motion to vacate his sentence, arguing his lawyer was ineffective for advising him to plead guilty without investigating Badosa's alleged change of heart. The district court adopted the magistrate judge's report and recommendation and denied the § 2255 motion, without an evidentiary hearing. This is Diaz's appeal.

II.

4

We review a district court's denial of an evidentiary hearing on a § 2255 motion for an abuse of discretion. *Aron v. United States*, 291 F.3d 708, 714 n.5 (11th Cir. 2002). "[I]f the petitioner alleges facts that, if true, would entitle him to relief, then the district court should order an evidentiary hearing and rule on the merits of his claim." *Id.* at 714-15 (internal quotation marks omitted); *see also* 28 U.S.C. § 2255(b). "[A] petitioner need only *allege* — not prove — reasonably specific, non-conclusory facts that, if true, would entitle him to relief." *Aron*, 291 F.3d at 715 n.6. We will liberally construe *pro se* briefs. *Timson v. Sampson*, 518 F.3d 870, 874 (11th Cir. 2008).

### III.

The district court found that Diaz would not prevail on his ineffective assistance of counsel claim even if the facts he alleged were true. We review an ineffective assistance of counsel claim *de novo*. *Devine v. United States*, 520 F.3d 1286, 1287 (11th Cir. 2008). To show ineffective assistance of counsel, the petitioner must demonstrate that (1) his counsel's performance was deficient and (2) he suffered prejudice as a result. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). We need not "address both components of the inquiry if the defendant makes an insufficient showing on one." *Id.* at 697. Where, as here, the petitioner challenges his guilty plea based on his counsel's alleged deficient performance, he can only show prejudice if "there is a reasonable probability that, but for counsel's

5

errors, he would not have pleaded guilty and would have insisted on going to trial."

*Hill v. Lockhart*, 474 U.S. 52, 59 (1985).

> [W]here the alleged error of counsel is a failure to investigate . . .
> potentially exculpatory evidence, the determination whether the error
> 'prejudiced' the defendant . . . will depend on the likelihood that
> discovery of the evidence would have led counsel to change his
> recommendation as to the plea.  This assessment, in turn, will depend
> in large part on a prediction whether the evidence likely would have
> changed the outcome of a trial.

*Id.*

Diaz was not entitled to an evidentiary hearing on his ineffective assistance

of counsel claim because, even assuming the facts he alleged are true, he cannot

show prejudice.  Diaz argues that, without Badosa's testimony implicating him in

the conspiracy, the government's case would have been eviscerated and he would

have insisted on going to trial.  But the evidence the government would likely have

introduced at trial was:  (1) receipts proving Diaz rented the car used in the

controlled delivery; (2) Diaz's call to Badosa during the delivery; (3) Valasquez's

call to Diaz on the day of the delivery; (4) the recorded phone call between Diaz

and Badosa; and (5) Diaz's statements to the DEA agents.

The government had a strong case against Diaz.  Although Badosa's

testimony may have been the only direct evidence, "it is frequently necessary to

resort to circumstantial evidence to prove [conspiracy's] elements."  *United States*

*v. Toler*, 144 F.3d 1423, 1426 (11th Cir. 1998).  "There is rarely any direct

evidence of an agreement to join a criminal conspiracy . . . ."  *United States v.*

*Gianni*, 678 F.2d 956, 959 (11th Cir. 1982). Diaz's statements to the DEA agents indicated that he had been in contact with the co-conspirators prior to the controlled delivery and that he had detailed knowledge of the delivery and subsequent events. Diaz also supplied the car used in the controlled delivery. And the phone calls between Diaz and Valasquez and Diaz and Badosa showed Diaz was in contact with both co-conspirators on the day of the controlled delivery and that Diaz checked up on Badosa after the delivery.

Even if Badosa had testified that Diaz was not a member of the conspiracy, the likely outcome of a trial would not have changed. Badosa was Diaz's cousin and co-defendant, which would have undermined the persuasiveness of his testimony. The government would also likely have impeached Badosa with his prior inconsistent statements, which directly implicated Diaz. Badosa's testimony would at best have been weak and likely incapable of overcoming the evidence against Diaz.

Diaz alleges general explanations for each piece of the government's evidence. But Diaz knew about these explanations when he pleaded, and he pleaded guilty anyway. To introduce his explanations at a trial, Diaz would have been required to testify. And if he had testified, the government would have elicited that Diaz gave Badosa the $4,000 that was to be used to buy the heroin and that Diaz had at least one prior felony conviction.

7

By pleading guilty, Diaz avoided a possible life sentence.  Advising a defendant to plead guilty "frequently involves highly practical considerations . . . . [such as] the expectation or hope of a lesser sentence . . . ."  *Tollet v. Henderson*, 411 U.S. 258, 268 (1973).  After pleading guilty, Diaz was sentenced to the comparatively minimal 100 months' imprisonment.  Considering the strength of the government's case and the risk of receiving a life sentence, we cannot say, in light of the weak evidence Diaz alleges his counsel failed to investigate adequately, that there was a reasonable probability Diaz's counsel would have advised him to go to trial.  Therefore, Diaz has not shown prejudice.

Because Diaz's guilty plea was knowing and voluntary, even assuming the facts Diaz alleged are true, he is not entitled to relief on his ineffective assistance of counsel claim.  Consequently, the district court did not abuse its discretion in denying an evidentiary hearing and properly denied Diaz's § 2255 motion.

**AFFIRMED.**